*In re* MARRIAGE OF ETHEL L. FOSTER, Petitioner-Appellant, and ALAN KENT FOSTER, Respondent-Appellee.

Fifth District   No. 82—502

Opinion filed June 10, 1983.

KASSERMAN, J., dissenting.

R. N. Gandy, of Peek and Gandy, of Du Quoin, for appellant.

Alan R. Farris, of Conn and Clendenin, of Sparta, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Ethel L. Foster, petitioner in this case, appeals from a final judgment of the circuit court of Randolph County which denied her petition to vacate a judgment of dissolution of marriage and to set aside the marital settlement agreement incorporated therein. The sole issue on review is whether the terms of the settlement agreement were unconscionable. For the reasons which follow, we affirm the judgment of the circuit court.

The parties were married on December 2, 1972, and until June 19, 1981, they lived together on an 11.78-acre tract of land which the re-

spondent had acquired prior to the marriage. At the time of the marriage, the property was improved with a barn and a mobile home. The parties purchased a new mobile home and erected a second barn during the marriage. Part of the new barn was converted into a retail store at a cost of about $7,000. About $8,000 in profits was reinvested in the business as fixtures and furniture over the years. Various other items, including farm equipment and household furniture, were purchased during the parties' marriage. Respondent was employed as a truck driver throughout the marriage and petitioner worked at various times as a waitress, sales clerk, police dispatcher and manager of the retail store. The parties were divorced on May 20, 1982, and custody of their only child was given to petitioner. The judgment of dissolution incorporated the parties' marital settlement agreement. The agreement provided respondent with visitation rights to the child and required respondent to pay $60 per week child support. Respondent was also to pay petitioner $50 a week maintenance for four months and $1,000 in attorney fees. Under the agreement the respondent was to receive: the 11.78 acres of land valued at $90,000 by the respondent and $100,000 to $200,000 by the petitioner; the mobile home, valued at $15,000 and encumbered with a $5,000 debt; the new barn, valued at $15,000 and encumbered with a $9,800 debt; and the old barn valued at $2,500; five horses and two colts valued at $7,000; farm equipment and tools valued at over $11,000; a 1975 Chevrolet truck for which no value appears in the record; the parties' business and inventory of approximately $26,000, encumbered by a $27,500 debt; $7,500 in proceeds from the sale of the parties' motor home; and assumption of two of the parties debts totaling $11,000. The petitioner was to receive: two horses, valued at $3,000; equipment and appliances valued at over $3,000; a 1976 Chevrolet Caprice automobile, valued at about $2,500; $20,000 in cash plus seven years buying rights at 10% over wholesale at the parties' business. The parties also made an equal division of their tax refund and proceeds from a hay sale. The settlement agreement was accepted by the trial court and incorporated into the judgment of dissolution. Within 30 days of the date the judgment was filed, the petitioner obtained new counsel and filed a petition in the nature of a post-trial motion. At the hearing on her post-trial motion, the petitioner testified that no one had threatened or tricked her and that she had read the agreement and was satisfied with it. The attorney who represented the petitioner during the dissolution proceeding testified at the hearing on the post-trial motion. He stated that the negotiations leading to the settlement agreement occurred over a period of months, beginning in

March of 1982 and ending in late May of the same year. Neither party obtained professional appraisals of the value of any property. The attorney testified that he had conferred with the petitioner and advised her that she could go to trial and that if she did, the property division could be greater or less than the division effected by the agreement. The trial court denied the post-trial motion on July 26, 1982, finding, *inter alia*, that the agreement was not unconscionable.

■ The petitioner contends that the marital settlement agreement is unfair, unconscionable, and against public policy, and should therefore be set aside. The standard governing judicial review of a property settlement is that the settlement is "binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." Ill. Rev. Stat. 1981, ch. 40, par. 502(b).

> "This section does not eliminate many of the traditional grounds for setting aside settlement agreements, including grounds of fraud, coercion, and violation of any rule of law, public policy or morals. See Reininger v. Reininger, 67 Ill. App. 3d 21, 384 N.E.2d 546, 23 Ill. Dec. 752 (4th Dist. 1978). However, 'fairness' and other similar standards for setting aside settlement agreements have been replaced by the standard of unconscionability. See Held v. Held, 73 Ill. App. 3d 561, 392 N.E.2d 169, 29 Ill. Dec. 612 (5th Dist. 1979)." (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 400 (Smith-Hurd 1980); see also *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 929-30, 428 N.E.2d 1005; *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1085-86, 424 N.E.2d 1342.)

No issue has been raised concerning fraud or coercion and petitioner's brief cites no public policy implicated by the trial court's judgment; consequently, the question before us is whether the trial court erred in finding that the agreement was not unconscionable. As support for her assessment of the agreement as unfair the petitioner has cited *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 103, which was decided before the effective date of section 502 and applied the prior law. (*Reininger v. Reininger* (1978), 67 Ill. App. 3d 21, 22-23.) Although many cases have cited *Crawford* with approval since section 502 became effective, "[o]ddly enough there are few Illinois appellate court cases that cite to section 502 of the Act when reviewing the propriety of a separation agreement." (*In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1085.) We believe the proper standard to be "unconscionability" rather than mere unfairness and

we therefore distinguish *Crawford*, which was decided under the former statute. (But see *In re Marriage of Hawkins* (1982), 106 Ill. App. 3d 68, 71, 435 N.E.2d 786 (citing, *inter alia, Crawford* in affirming the trial court's setting aside of an "unfair and inequitable" agreement).) " 'In order to determine whether the agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party.***' " (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 401 (Smith-Hurd 1980), citing Uniform Marriage and Divorce Act sec. 306, Commissioners' Note, at 137 (9A Uniform Laws Annotated (1979)).) From this statement, it can be inferred that the inquiry into unconscionability involves at least two separate considerations: one, the conditions under which the agreement was made (see, *e.g., In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1087; *In re Marriage of Perry* (1981), 96 Ill. App. 3d 370, 375, 421 N.E.2d 274) and two, the economic circumstances of the parties resulting from the agreement (see, *e.g., In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930-31; *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1087). These areas of inquiry will be considered in turn.

The petitioner argues that the conditions under which the parties reached the agreement were so oppressive as to render the agreement unconscionable. There was no allegation of nondisclosure or misrepresentation on respondent's part. Petitioner's characterization of the circumstances leading to the trial court's approval of the settlement agreement as a "rush to judgment" is belied by the lengthy negotiations which preceded the agreement. Petitioner devotes a large portion of her brief to her trial attorney's alleged failure to evaluate properly the marital or nonmarital character of the 11.78 acres of land. We make no determination of the actual status of the property; however, on this record an unequivocal evaluation by petitioner's attorney would have been unwarranted. Consequently we find nothing in the circumstances surrounding the parties' settlement to support a finding of unconscionability.

■ In determining whether the economic situation resulting from a settlement agreement is unconscionable, the appellate court has applied traditional concepts of unconscionability employed in commercial law. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930-31; see also Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 400-01 (Smith-Hurd 1980).)

"An unconscionable bargain has been defined as one 'which no

man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' (*Hume v. United States* (1889), 132 U.S. 406, 410, 33 L. Ed. 393, 395.) The term 'unconscionability' includes 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' (*Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965), 350 F.2d 445, 449.) A contract is unconscionable when it is improvident, totally one-sided or oppressive. *Walter E. Heller & Co. v. Convalescent Home of The First Church of Deliverance* (1977), 49 Ill. App. 3d 213, 365 N.E.2d 1285; *Neal v. Lacob* (1975), 31 Ill. App. 3d 137, 334 N.E.2d 435." (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930-31.)

Applying these general principles to the terms of the agreement, we are in accord with the trial court's determination that the agreement was not unconscionable. While there was not an equal distribution of the property, petitioner was not left destitute as she received a $20,000 cash settlement. Consequently, we conclude that the agreement was not so totally one-sided as to be unconscionable. We therefore affirm the judgment of the circuit court of Randolph County.

Affirmed.

WELCH, J., concurs.

KASSERMAN, J., dissenting:

Under the rationale of *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 428 N.E.2d 1005, and *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 424 N.E.2d 1342, it is my conclusion that the marriage settlement agreement approved by the trial court is unconscionable when viewed from the standpoint of the economic circumstances of the parties resulting from the agreement; therefore, I respectfully dissent.

Under the contract the defendant received approximately $100,000 more property than did plaintiff; and, although an equal division of marital property is not required, there should be a just division.

Therefore, I would reverse the judgment of the circuit court of Randolph County and remand the cause for a hearing on division of property.