*In re* MARRIAGE OF PAULA D. KLOSTER, Plaintiff-Appellee, and JOHN M. KLOSTER, Defendant-Appellant.

Second District   No. 2—83—0901

Opinion filed September 24, 1984.

Alex M. Abate, of Abate & Pirrello, of Rockford, for appellant.

Roberta L. Holzwarth, of Holmstrom & Green, of Rockford, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

John M. Kloster appeals from a judgment in a marriage dissolution proceeding which incorporated a settlement agreement with his wife, Paula D. Kloster. He contends that the agreement is invalid and unconscionable.

I

John's claim of invalidity is based upon his contention that, although he signed one copy of the agreement, and his wife an identical copy, neither actually agreed to its terms. He first argues that the fact that separate copies were signed, neither document including both signatures, proves that there was no meeting of the minds. We disagree.

While there appears to be no Illinois decision directly in point in a marital case, the application of normal contract rules belies the husband's contention. The provisions of a settlement agreement are to be interpreted by normal contract rules. (*In re Marriage of Thaden*

(1983), 119 Ill. App. 3d 538, 540.) A contract may be composed of several writings. A contract signed by the party to be charged may be enforced against him. (*Glabman v. Bouhall* (1980), 81 Ill. App. 3d 966, 969.) The contract may also be composed of several writings whose terms do not conflict, "and which, when connected, show the parties, subject matter, terms, and consideration." *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 816.

■ Here, both parties signed identical copies of the agreement on the same day. Later that day, upon learning that Paula had changed attorneys, John called her. He objected to the change of attorneys, saying "We had this thing all settled." John testified that he thought Paula was dissatisfied with the agreement. Paula, however, testified she was dissatisfied with her attorney, not with the agreement, although she said she would like some unspecified matters clarified. This testimony was insufficient to show that Paula had rejected the agreement.

■ John also argues that there was no mutual assent because the parties disagreed about the interpretation and effect of the agreement. Paula thought John's monthly obligation would amount to approximately 40% of his monthly take-home pay, while John stated the obligation amounted about 60%. Subjective agreement to the terms of a contract is not required; conduct indicating agreement with its terms is sufficient. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 331; *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 992.

■ John said he did not understand the agreement, but signed it after he and his attorney "thumbed through it," because his attorney "was anxious" and wanted to "get this thing over quickly." An agreement, even if signed under duress alleged by one party, is binding if later conduct affirms it. (*Board of Education v. Ballweber* (1983), 96 Ill. 2d 520, 526-27.) One who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding or that the contract misled him. (*Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 66.) Furthermore, John's statement affirming the settlement, and his agreement at trial that Paula's testimony as to the terms of the agreement was accurate, show he understood and agreed to the settlement.

Illinois courts look with favor upon amicably agreed property settlements and will not set them aside absent proof of fraud, duress, or variance with public policy. (*Stutler v. Stutler* (1978), 61 Ill. App. 3d 201, 204; *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 875.) Here there are no allegations of fraud or duress sufficient to invali-

date a contract. John's implied allegation that his attorney hurried him into signing does not amount to legal duress.

■ John's reliance on *In re Marriage of Perry* (1981), 96 Ill. App. 3d 370, 373, is misplaced. In *Perry*, the husband, his attorney, and the wife's attorney negotiated a settlement agreement, out of the wife's hearing, 15 minutes before trial. At trial the wife objected that the income figures were inaccurate and presented evidence to that effect. On appeal, the *Perry* court required a rehearing, finding duress, lack of mutual assent, and disparities in the evidence concerning marital property. Here, the parties met to discuss the terms in January and signed the agreement in April. Both were represented by attorneys. The property, income, and expenditures listed in the agreement were not disputed. Where the contents of an agreement are testified to and the objecting party fails to object or to give evidence to the contrary, the agreement is established. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 444.) A property settlement should not be disregarded simply because one party has second thoughts. *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 522.

"Whether a contract exists, its terms and the intent of the parties are questions of fact to be determined by the trier of fact." (*Peoria Harbor Marina v. McGlasson* (1982), 105 Ill. App. 3d 723, 727.) The appellate court will not reverse the judgment of the trial court unless contrary to the manifest weight of the evidence. 105 Ill. App. 3d 723, 727.

We conclude that the parties entered a valid and enforceable agreement.

## II

■ John argues, finally, that even if the parties entered a valid agreement, it is unenforceable because unconscionable.

In summary, the settlement agreement, as incorporated unchanged into the divorce decree, provided as follows:

Paula received custody of the four children, child support of $130 per week, maintenance of $10 per week, the 1977 Toyota, personal property and household furnishings, her attorney fees, and a $5,000 life insurance policy. She received possession of the marital home until she remarries or the youngest child reaches 18, and, when the home is sold, the first $15,000 of the principal and half the additional proceeds after certain deductions are taken.

John received specified visitation rights, the right to claim child support as a tax deduction, the 1980 Buick subject to an unspecified indebtedness, shop supplies and personal property in his possession,

his profit sharing plan (present value estimated to be $20,000), half the proceeds of the marital home after the first $15,000 and other deductions, and a $10,000 life insurance policy.

Paula is obligated to grant specified visitation, to pay the first $50 per child, up to an aggregate of $200 per year, for medical expenses not covered by insurance, and also to pay "repair or maintenance expenses to the marital home not exceeding $50."

John is obligated to pay, in addition to child support and maintenance, real estate taxes and insurance on the house (estimated to amount to $83 per month), the children's medical expenses exceeding $200 and not covered by insurance, the mortgage of $269.82 per month, and the cost of repairs for the maintenance of the home exceeding $50. He is also obligated to keep current medical insurance for the children and a life insurance policy naming the children as beneficiaries.

At the time of the order, John's income was approximately $31,000 per year, his biweekly take-home pay was approximately $700-$760, and his monthly take-home pay was estimated at $1,646. His undisputed calculations indicate he must pay $949 per month for support, mortgage, taxes and insurance on the marital home, amounting to approximately 57% of his take-home pay. His obligation for the children's medical expenses and for maintenance on the home are open-ended.

Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act provides:

> "The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." Ill. Rev. Stat. 1983, ch. 40, par. 502(b).

Under section 502(b) the court may not reject a settlement agreement for unfairness, but only for unconscionability. (*In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1088.) In *Miller*, unconscionability was equated with one-sidedness or oppressiveness. (98 Ill. App. 3d 1084, 1087.) John relies upon *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 461-64, but it is distinguished by the fact that it was decided before the effective date of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1983, ch. 40, par. 101 *et seq.*

In *In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 972-73, the court defined an unconscionable bargain by commercial law princi-

ples as that bargain "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other," and, as that bargain which is "totally one-sided or oppressive." (115 Ill. App. 3d 969, 972-73, citing Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 400-01 (Smith-Hurd 1980).) The *Foster* court proposed a two-part inquiry into unconscionability, in which the court is to examine the conditions under which the agreement was made and the resulting economic circumstances. (115 Ill. App. 3d 969, 972.) Under this test, or under the generally accepted understanding, the agreement before us may not be characterized as "unconscionable."

Courts have found unconscionable conditions requiring reversal of settlement agreements where the agreement was hastily contrived and where the plaintiff immediately objected to the agreement. (See *In re Marriage of Perry* (1981), 96 Ill. App. 3d 370, 373; *In re Marriage of Lorenzi* (1980), 84 Ill. App. 3d 427 (agreement held procured by fraud where wife signed a "consent and appearance," was not represented by an attorney, and did not appear in court).) In contrast, here, both Paula and John were represented by separate counsel. The agreement was first discussed in January and was reduced to writing in April. Moreover, there is no allegation of fraud.

As to the resulting economic conditions of the parties, it does not appear that the agreement is so one-sided as to be unconscionable as a matter of law.

In *Foster*, an agreement which provided that petitioner receive $100,000 more property than respondent was found not to be unconscionable. (115 Ill. App. 3d 969, 973.) In *In re Marriage of Held* (1979), 73 Ill. App. 3d 561, 566, an agreement providing petitioner $500 per month child support for three children and the marital home subject to a $14,000 mortgage, where respondent earned $18,000 per year, was held not to be unconscionable. On the other hand, a marital agreement entered under conditions indicating respondent "did not make a meaningful choice" was set aside as unconscionable where petitioner received custody of the parties' two children, the 1975 Ford, and the marital home, and respondent received $55 per week for 16 weeks. (*In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 931.) A decision setting aside a marital settlement as "manifestly unfair and inequitable" was affirmed where the agreement gave respondent $600 per month for three months, custody of the children, and child support of $167 per child per month, while petitioner received all the interest in the family farm. (*In re Marriage of Hawkins* (1982), 106 Ill. App. 3d 68, 70-71.) In *Hawkins*, respondent was not represented

by counsel at the hearing, and the court found that petitioner fraudulently induced respondent to sign the agreement and fraudulently misrepresented the value of the farm.

In the present case, both parties were represented by counsel at all times. There is no unfairness surrounding the execution of the agreement. It appears that the parties divided their property relatively evenly, and that John's $31,000 per year salary has been apportioned fairly in order to cover his needs and the needs of the four minor children. While the division may not be perfect, and while the agreement may favor one party more than the other, the decision that the agreement was not unconscionable is supported by the manifest weight of the evidence. *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1089.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.