*In re* MARRIAGE OF SHERIDAN SMITH, Petitioner-Appellee, and DIXIE LEE SMITH, Respondent-Appellant.

First District (2nd Division)   No. 86—3160

Opinion filed December 22, 1987.

Robert F. Lisco, of Lisco & Field, of Chicago (Sidney Z. Karasik and Mary Ellen Dienes, of counsel), for appellant.

Schiller, Du Canto & Fleck, Ltd., of Chicago (Charles J. Fleck and Sarane C. Siewerth, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent Dixie Lee Smith (Lee) appeals from orders entering a supplemental judgment of dissolution of marriage and denying her motion to vacate that judgment. The issues to be reviewed on appeal are whether the circuit court erred: (1) in entering the supplemental judgment of dissolution of marriage; (2) in denying Lee's motion to vacate the supplemental judgment and the order entering that judgment; and (3) in barring evidence, at the hearing on Lee's motion to vacate, concerning the parties' past employment, their relative economic contributions to the marriage, and petitioner's financial situation after the parties concluded an oral settlement agreement.

Petitioner, Sheridan Smith (Sheridan), and Lee, married on August 4, 1972, had two children: Sheridan Grant, born in 1976; and Jordan Lee, born in 1978. On February 9, 1982, when Sheridan was a medical school student and Lee was unemployed, Sheridan filed a petition for dissolution of marriage. By agreed order entered March 3, 1982, Lee was given custody of the children and awarded 40% of Sheridan's income for support. Custody was transferred to Sheridan in August 1984, and the children remained with Sheridan for the duration of the dissolution proceedings.

Lee underwent surgery in July 1985 to replace her left hip with an artificial joint; her right hip joint was replaced in December 1985. The circuit court ordered Sheridan to assume payment of the premiums on Lee's medical insurance at $82 per month, and to pay up to $50 per month for Lee's prescriptions not covered by insurance. Sheridan also was ordered, on October 31, 1985, to increase his monthly support payments to $450. Lee continued to receive support payments at this rate through the termination of the dissolution proceedings.

On September 9, 1985, Sheridan moved the circuit court for an immediate prove up and entry of judgment of dissolution of marriage, alleging that: his marriage to Lee had suffered an "irretrievable breakdown"; the woman with whom Sheridan lived, Janice Craig (Janice), was pregnant; and he wished to marry Janice and ensure that their child would be legitimate at birth. Sheridan requested a judgment dissolving the marriage and delaying all other pertinent issues for further consideration. The circuit court entered a bifurcated judgment of dissolution of marriage on September 10, 1985, and reserved consideration of maintenance, support, attorney fees, custody, visitation, and property division for trial.

Between September 10, 1985, and May 14, 1986, the date scheduled for trial, negotiations continued between the parties and their

counsel in an effort to resolve issues not disposed of by the bifurcated judgment. Lee and Evan Mammas, her then attorney, however, disagree as to the nature of these negotiations and their own conversations concerning the dissolution proceedings.

On July 12, 1985, Charles Fleck (Fleck), Sheridan's attorney, mailed a written settlement proposal to Mammas. Lee testified she never saw the document, but admitted discussing the proposed terms, which she found unacceptable, with Mammas by phone. Mammas, too, believed the proposal was inadequate and drafted a counterproposal which he discussed with Lee and sent to Fleck in early August 1985. The ultimate disposition of the counterproposal is not clear.

By May 14, 1986, custody and visitation rights were authorized in a separate, written agreement, and the parties orally agreed to the following financial settlement: Sheridan would pay Lee $550 per month as maintenance for one year upon entry of judgment; all maintenance payments would cease at the end of the 12-month period; Lee would also receive $2,500 upon entry of judgment and another $2,500 on January 2, 1987; the maintenance payments were nonmodifiable; all personal property in the parties' possession at the time of their separation would remain in their possession; the parties would be responsible for their own legal fees.

In the ensuing prove up, Sheridan testified that no marital property remained to be divided. Sheridan and Lee stated that they understood and agreed to the terms of the oral settlement agreement. Lee further averred that, although currently unemployed, she believed she could secure employment and be self-supporting in the future, provided her physical rehabilitation from the hip operations "goes O.K." As to the financial settlement, Lee stated: the settlement had been the subject of several discussions between the parties; she agreed to be bound by the settlement terms; she was not "forced into" the agreement by Sheridan, the court, or attorneys for either party; she was satisfied with the settlement terms and Mammas' representation of her in this matter. The only question raised by Lee concerned the consequences of an increase in her insurance premiums. This conversation, however, occurred off-record and its contents are not known.

Within 24 hours of the prove up on May 14, 1986, Lee disavowed the settlement agreement, discharged Mammas and hired new lawyers, Lisco and Field, who were recommended to her by her boyfriend, with whom she discussed the settlement agreement immediately following the prove up and who gave her money to hire a new attorney.

At an appearance by both parties on July 22, 1986, Lee urged the

circuit court not to enter a supplemental judgment of dissolution of marriage, arguing that the agreement as to maintenance and monetary awards was unconscionable. On July 24, 1986, the circuit court entered an order which noted Lee's objection to the entry of the supplemental judgment of dissolution of marriage; stated that the oral settlement agreement negotiated by the parties and respective counsel would not have been approved on May 14, 1986, if the court believed the agreement was unconscionable; and ordered that the supplemental judgment should be entered to "finally terminate four years of litigation in this cause." The supplemental judgment of dissolution of marriage included the terms of the oral settlement agreement as accepted by the parties on May 14, 1986, and a statement that the "oral agreement was freely and voluntarily entered into, free from any duress or coercion with full knowledge of each and every provision contained in the agreement and the consequences thereof."

Pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1203), Lee moved the circuit court, on August 15, 1986, to vacate the supplemental judgment.

The court conducted an evidentiary hearing on October 21, 1986, pursuant to Lee's motion to vacate, but refused to permit Lee to testify about the financial and employment histories of the parties during their marriage, asserting that this information was irrelevant to the issues of coercion and unconscionability. Further, the court maintained that it had already conducted a hearing as to unconscionability on May 14, 1986. Lee was limited to making an offer of proof of facts alleged in the motion to vacate. As to Lee's allegation that Sheridan purchased a $210,000 home immediately following the prove up, and made a $21,000 downpayment on that home, the court refused to allow even an offer of proof, insisting that the evidence went beyond the issues raised in the pleadings.

Lee was permitted to testify at the hearing concerning her relationship with Mammas. Among other things, Lee conceded she lied at the prove up when asked whether she agreed to the terms of the settlement; agreed to be bound by those terms; and was forced to accept the settlement. Mammas testified as to his professional relationship with Lee. The court denied Lee's motion, finding that her admission of lying at the prove up destroyed her credibility. Mammas was found by the court to be a credible witness who "did his job the way a lawyer is supposed to do."

On November 12, 1986, Lee filed a notice of appeal, requesting that this court reverse the supplemental judgement of dissolution of marriage entered July 24, 1986, and the October 23, 1986, order de-

nying Lee's motion to vacate. Lee also requested that the case be remanded for a redetermination of the rights of the marital parties.

I

Lee initially contends that the circuit court erred in entering the supplemental judgment and in denying her motion to vacate because the maintenance and monetary award provisions in the judgment are unconscionable.

■■ ■ Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 502(b)), provides that the terms of a separation agreement, except provisions concerning support, custody and visitation of children, are binding upon the court unless it finds the agreement unconscionable. (*In re Marriage of Morris* (1986), 147 Ill. App. 3d 380, 389, 497 N.E.2d 1173; *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 929, 428 N.E.2d 1005.) Section 502(b), however, does not eliminate traditional grounds for setting aside settlement agreements, including: fraud, duress, coercion and violation of any rule of law, public policy or morals. (*In re Marriage of Moran* (1985), 136 Ill. App. 3d 331, 336, 483 N.E.2d 580; *In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 971, 451 N.E.2d 915; *Carlson*, 101 Ill. App. 3d at 929-30.) Coercion, fraud or duress must be proved by clear and convincing evidence. *In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 314, 474 N.E.2d 28; *Carlson*, 101 Ill. App. 3d at 930.

■■ The inquiry into unconscionability requires two distinct considerations: (1) the conditions under which the agreement was made; and (2) the economic circumstances of the parties resulting from the agreement. (*Foster*, 115 Ill. App. 3d at 972.) In determining whether the parties' relative economic positions are unconscionable, courts employ commercial concepts of unconscionability: an absence of a meaningful choice on the part of one of the parties combined with terms unreasonably favorable to the other party. (*Foster*, 115 Ill. App. 3d at 972-73; *Carlson*, 101 Ill. App. 3d at 930.) Unconscionable terms are also defined as improvident, totally one-sided and oppressive. (*In re Marriage of Brandt* (1986), 140 Ill. App. 3d 1019, 1021, 489 N.E.2d 902; *Foster*, 115 Ill. App. 3d at 973.) On review, the circuit court's ruling regarding unconscionability will stand unless it is found to be against the manifest weight of the evidence. *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 1088, 424 N.E.2d 1342.

■■ Lee insists the circumstances surrounding the creation of the settlement agreement convincingly demonstrate unconscionability. Lee asserts that during her testimony at the May 14, 1986, prove-up hear-

ing, she suffered significant pain in her right hip and that Mammas pressured her into accepting the settlement terms. Mammas is said to have "totally abandoned" Lee in the hours preceding the prove up by telling her she had to accept the offer; if she didn't accept the offer she could get another attorney and Mammas would withdraw; the offer represented the best available settlement because "there wasn't any money"; and she could do no better at trial. Lee further stated that she was not taking medication on May 14, and she suffered "tremendous stress." Finally, Lee contends she never agreed to the oral settlement terms and repeatedly told Mammas the agreement was unfair. Mammas discussed "very little" the financial aspects of the settlement agreement in the months he represented her. She could not recall if Mammas told her trial was scheduled to commence on May 14, 1986.

Mammas' testimony was to the contrary. He indicated that there were on-going settlement negotiations with Fleck between March 1985 and the day of the prove up. Mammas averred he discussed the proposed settlement terms received July 12, 1985, with Lee and that both attorney and client agreed the terms were inadequate. Mammas assertedly informed Lee a full month in advance that trial was scheduled to begin on May 14, 1986. On May 14, Mammas claims to have discussed the terms of Sheridan's latest proposal with Lee for two hours before the hearing. When informed earlier that Lee had incurred debts totalling $32,000, not $50,000 as first claimed by Lee, Mammas asked her to bring supporting documentation to his office on May 14, but she produced only a handwritten list that she made. At his office, Mammas related Sheridan's latest settlement offer: $450 per month for maintenance; each party would retain any personal property they currently held; Lee, when capable of doing so, would contribute child support to Sheridan; and Lee would receive $2,500 for attorney fees. Lee rejected that offer.

Mammas insists he never told Lee that the final terms offered were the best she could get, nor did Lee even inform him she was in pain or found the terms of the oral agreement unfair or unacceptable. Mammas testified he also told Lee that if she refused the settlement the issues would be presented to the judge for his determination and Mammas was prepared to go to trial. Mammas maintains he never threatened to withdraw if Lee refused the settlement offer, and that one of the two $2,500 awards granted Lee in the oral agreement was originally offered as payment of Mammas' legal fee; Mammas, however, waived any further fees from Lee and included the $2,500 as part of Lee's settlement. Finally, Lee assured Mammas she expected

to be self-supporting within a year, upon completion of her physical rehabilitation, and that she was negotiating with her father for an advance on her inheritance.

The circuit court, at the conclusion of the hearing on Lee's motion to vacate, chose to accept Mammas' version of events surrounding the settlement negotiations, noting that Lee repeatedly admitted lying on May 14 as to whether she accepted the settlement terms, agreed to be bound by them, or was forced to accept them. It is not claimed that Mammas dictated answers to be given by Lee prior to the prove up or in any way instructed her as to how to answer questions asked of her. The circuit court's finding that Lee destroyed her credibility and that her accounting of prior events was suspect cannot be disturbed, but must be accepted absent evidence that the court abused its discretion. (*In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 309, 411 N.E.2d 988.) There is no evidence here of any such abuse.

Lee's claim of pain suffered on May 14, moreover, whether or not credible, does not appear to have clouded her cognitive abilities or capacity to recall and relate material facts. Lee never testified that she told Mammas of her discomfort that day, and the transcript of the prove up is devoid of any indication of Lee's alleged impairment; her answers to questions put to her appear clear and uninhibited.

As to the relative economic conditions of the parties resulting from the agreement, Lee raises several factors as indicating the settlement left her relatively destitute and her ex-husband financially advantaged: Lee allegedly incurred $50,000 in debt as a result of her hip replacements; she is disabled with no immediate prospects for employment; she has monthly expenses of approximately $1,100, more than double the maintenance payments granted under the agreement; Sheridan has excellent prospects of a high income in the future, as does Janice, Lee lacks a college degree and therefore, even if her physical rehabilitation is successful, it is unlikely she will ever match Sheridan's future income. Lee misinterprets the second prong of the *Foster* test: unconscionability is determined by examining economic conditions resulting from the agreement. (*Foster*, 115 Ill. App. 3d at 972.) Lee's argument that Sheridan will someday realize an income significantly higher than her own is conjecture. Lee may have incurred debts as a result of her illness; however, the amount of those debts was contradicted by Mammas' testimony that they totalled only $32,000, for which Lee had no documentation. Sheridan also had debts of $80,000, monthly debt payments of $1,700 and an annual income of only $24,000, plus $1,000 a month earned by moonlighting. Sheridan's prospects for future success and Lee's prospects for a life

hampered by physical difficulties may appear unfair; nevertheless, unfairness alone is not enough to render a settlement agreement unconscionable. (*Foster*, 115 Ill. App. 3d at 971-72.) On the basis of this evidence alone, it cannot be said that the financial advantage enjoyed by Sheridan as a result of the agreement was either so one-sided or so oppressive as to be unconscionable. The supplemental judgment of dissolution and denial of Lee's motion to vacate cannot be said to be against the manifest weight of the evidence.

■■ Lee correctly notes that an agreement may be found unconscionable where it is hastily contrived (*Brandt*, 140 Ill. App. 3d at 1024; *In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 588, 469 N.E.2d 381), and where the movant objects immediately to the agreement (*Kloster*, 127 Ill. App. 3d at 588). True, Lee fired Mammas, retained new counsel, and expressed dissatisfaction with the settlement agreement within 24 hours of the prove up; however, she failed to establish without contradiction existence of a hastily contrived agreement, finalized in a "flurry" of negotiations. The court could have believed instead that the financial aspects of the agreement were discussed in the months preceding the prove up, including conversations prompted by Sheridan's written proposal of July 12, 1985, that two hours before the prove up were also devoted to Sheridan's latest settlement offer, and that negotiations were continued at the courthouse.

## II

Lee urges that the circuit court erred in refusing to admit certain evidence of the parties' employment records and respective financial contributions to the marriage at the hearing on her motion to vacate, which would have affected its determination as to unconscionability.

Lee's new attorney attempted to introduce evidence concerning Lee's contributions to the family unit of a $25,000 inheritance and funds borrowed from her father, as well as the fact Lee worked steadily until the children were born while Sheridan's employment record in the same period was sporadic and minimal. Lee was permitted to make an offer of proof on these points but was refused an offer of proof on her allegation that, soon after the prove up, Sheridan and Janice made a $21,000 down payment on a $210,000 home in Oak Brook, Illinois.

■■ ■ A party alleging unconscionability of a settlement agreement must be permitted to present evidence relevant to that agreement (*In re Marriage of Lorenzi* (1980), 84 Ill. App. 3d 427, 431, 405 N.E.2d 507); however, the admission or exclusion of evidence is within

the circuit court's discretion and will not be disturbed absent an abuse thereof (*In re Estate of Weir* (1983), 120 Ill. App. 3d 18, 22, 458 N.E.2d 134). In this case, the circuit court excluded evidence concerning the couple's financial and employment history because it was irrelevant to the determination of unconscionability. The court correctly noted that the determination of unconscionability focuses on the parties' relative economic positions immediately following the making of the agreement (*Foster*, 115 Ill. App. 3d at 972); the contributions of the parties to the marriage before the entry of the agreement has no bearing on the question of unconscionability.

■■ Evidence concerning Sheridan's alleged purchase of a $210,000 home immediately following the prove up, however, is relevant to his economic situation resulting from the settlement agreement. This allegation contrasts sharply with testimony adduced at the October 21, 1986 hearing that Sheridan bore $80,000 in debts, with monthly debt payments of $1,700 and that his annual income amounted to only $36,000. Evidence of the downpayment also would test the veracity of Mammas' representations that Sheridan lacked the assets necessary to increase Lee's share of the settlement agreement. In particular, Mammas allegedly told Lee, with reference to Sheridan's estate, "that is all there is, Lee" and that "this is the best you can get." Further, he emphasized Sheridan's loans and monthly loan payments. Mammas also dismissed as "ludicrous" Lee's desire to obtain maintenance of $600 per month. Lee therefore should be allowed to ascertain and demonstrate when the home was purchased and whether the funds were Sheridan's or originated from another source. Exclusion of this evidence was an abuse of the circuit court's discretion and the cause must be reversed and remanded for further hearings on this issue.

■■ Evidence demonstrating that Sheridan undervalued or misrepresented his assets potentially could also affect Lee's contention that the agreement was unconscionable for failure to compensate her financial sacrifices made to support Sheridan during their marriage. A contributing spouse is entitled to some form of compensation for the financial efforts and support provided to the student spouse in the expectation that the marital unit would prosper in the future as a direct result of the couple's previous sacrifices. (*In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 241, 470 N.E.2d 551.) The question here is whether Lee's sacrifices resulted in unrevealed marital funds held by Sheridan sufficient to make the downpayment and purchase of an expensive home. Conceivably, if answered in the affirmative, other questions of concealment may arise. Any resultant compensation,

however, must be fashioned from the existing marital assets, maintenance, or an equitable monetary award. (*Weinstein*, 128 Ill. App. 3d at 242.) On the other hand, marital assets owned by Sheridan and Lee may have been dissipated by the time judgment was entered as the circuit court was first led to believe. A supplementary evidentiary hearing should resolve this issue.

## III

Lee lastly contends the agreement was procured by coercion and duress and is therefore subject to vacatur. (See *Moran*, 136 Ill. App. 3d at 336; *Foster*, 115 Ill. App. 3d at 971; *Carlson*, 101 Ill. App. 3d at 929-30.) Certain facts Lee insists, demonstrate that she agreed to the settlement under duress, including: the agreement was hastily contrived minutes before the prove up; Lee felt abandoned by Mammas; Mammas coerced her into accepting the settlement by promising to waive future fees; Lee was in great pain the day of the prove up; Lee immediately sought new counsel after the prove up.

■■ Duress is defined as the imposition, oppression, undue influence or the taking of undue advantage of the stress of another whereby one is deprived of the exercise of his free will. (*Morris*, 147 Ill. App. 3d at 392; *Riedy*, 130 Ill. App. 3d at 314.) The party asserting duress or coercion must prove the allegation by clear and convincing evidence. (*Morris*, 147 Ill. App. 3d at 392.) In *Moran*, this court vacated a property settlement agreement, holding that petitioner entered into the agreement under the influence of duress, coercion and misrepresentation. The court cited as evidence of wrongdoing: petitioner was not allowed to participate in the drafting of the agreement; from the date the agreement was drafted to the date of the prove up, petitioner objected continuously to the terms of the agreement; petitioner's attorney threatened to terminate his representation of petitioner on the eve of trial; petitioner's attorney was motivated to force petitioner to accept the agreement by a promise of a higher fee from respondent; the circuit court pressured petitioner to accept the agreement and misled petitioner as to her chances of obtaining a more favorable settlement at trial. *In re Marriage of Moran*, 136 Ill. App. 3d at 336-39.

■■ In the case *sub judice*, there is no evidence that the circuit court exerted any influence on Lee to accept or reject the agreement. Mammas, moreover, testified that he was prepared to try the case; Lee appeared satisfied with the final settlement proposal; and he never threatened to abandon Lee. Evidence adduced at the October 21, 1986, hearing demonstrated Lee's participation in the settlement

negotiations over a period of months, culminating in the bargaining session of May 14, 1986. Furthermore, Mammas waived any claim to future fees from Lee, but there was no evidence that he did it in order to obtain a more favorable payment from Sheridan.

With the exception of Lee's immediate rejection of the agreement, no event surrounding the finalization of settlement terms indicates any advantage taken of Lee or deprivation of her free will as would support her theory of coercion or duress.

For the foregoing reasons, the orders of the circuit court entering the supplemental judgment of dissolution of marriage and denying Lee's motion to vacate that judgment are reversed, and the cause is remanded for further hearings concerning the parties' relative economic circumstances which resulted from the oral settlement agreement.

Reversed and remanded.

SCARIANO, P.J., and STAMOS, J., concur.