Nos. 2--05--0098 & 2--05--0405 cons.

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| <u>In re</u> MARRIAGE OF<br>CATHY HOUSTON McNEIL, | ) )<br>) | Appeal from the Circuit Court<br>of Du Page County. |
| Petitioner-Appellee, | )<br>) | |
| and | )<br>) | No. 03--D--263 |
| KENNETH KARL McNEIL, | )<br>) | Honorable<br>James J. Konetski, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| <u>In re</u> MARRIAGE OF<br>CATHY HOUSTON McNEIL, | ) )<br>) | Appeal from the Circuit Court<br>of Du Page County. |
| Petitioner-Appellee, | )<br>) | |
| and | )<br>) | No. 03--D--263 |
| KENNETH KARL McNEIL, | )<br>) | Honorable<br>Blanche Hill Fawell, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CALLUM delivered the opinion of the court:

Respondent, Kenneth Karl McNeil, appeals from the circuit court's orders: (1) denying his motion to reject the terms of a divorce settlement agreement; (2) entering the divorce settlement agreement; (3) finding him guilty of willful contempt for failing to pay child support; and (4) denying his motion for rehearing on the contempt order. For the following reasons, we reverse and remand this cause for further proceedings.

## I. BACKGROUND

### A. Settlement Agreement

Respondent and petitioner, Cathy Houston McNeil, now known as Cathy McNeil Stein, were married on October 12, 1986. The parties have two children. Petitioner filed a petition for dissolution of marriage on December 10, 1992. The parties executed a marital settlement agreement (agreement) on May 30, 1993, and, on June 29, 1993, a judgment for dissolution of marriage was entered, incorporating the terms of the agreement.

On December 23, 2002, petitioner filed a petition for rule to show cause, alleging that respondent failed to comply with the agreement's terms requiring him to pay child support; health, dental, and life insurance; and uninsured medical expenses, and that respondent owed over $60,000 in support and insurance payments. Petitioner alleged that respondent, a graduate of the Wharton School of Business and Harvard Law School, voluntarily resigned from a salaried legal position and willfully refused to obtain employment necessary to make child support and other payments.

In response, respondent admitted that he failed to fully comply with the agreement and that he was in arrears on his payments, but he denied that the arrearage approached $60,000. Moreover, he admitted that he voluntarily resigned from a salaried position, but he explained that he left his employment to begin a divorce mediation practice. Shortly after starting his new business, respondent was injured and immobilized and, ultimately, was unable to successfully start his practice. Respondent,"a practitioner in the field of domestic relations," focused his efforts on representing parties in domestic relations cases and attempted bartending to supplement his income. Respondent further alleged that he was subject to a federal tax lien and that he was able to pay petitioner only $500 from July 2001 to December 2002. Respondent later amended his response,

asserting that he had obtained employment and was a member of Nadler, Pritikin & Mirabelli, LLC, a domestic relations law firm.

On August 15, 2003, petitioner filed a petition to amend the dissolution judgment, seeking modification of various terms of the agreement, including respondent's custody and insurance obligations. On August 5, 2004, prior to the hearing on the return of the rule to show cause, the parties reached a settlement resolving all pending issues. At the proveup hearing, respondent was represented by Enrico Mirabelli, a partner at his law firm. Petitioner, also an attorney, appeared pro se. The settlement terms were read into the record. The settlement provided, in pertinent parts, that: (1) the rule to show cause would be discharged and there would be a finding that respondent's failure to pay support was not willful and contumacious, but was due to financial and health circumstances beyond his control; (2) respondent's monthly child support obligations would increase to $1,100; (3) joint custody of the children would remain intact, although certain decisionmaking responsibilities would be reallocated between the parties; (4) respondent's obligation for all past-due child support, and interest due on the child support, totaled $42,700; (5) respondent would immediately tender $12,700 as an initial payment on the arrearage; and (6) the remaining $30,000 would be paid at a rate of $6,000 per year, on or before December 31 of the year. No interest would accrue on the annual amount, and petitioner would not file any further actions to collect the unpaid balance. If, however, respondent failed to make a payment in a timely fashion, 9% interest would be added to the unpaid balance and the payment plan would be accelerated such that a judgment could be entered against him for the entire unpaid balance and all accrued interest.

Upon examination at the proveup hearing, respondent testified that, although there was no petition filed to increase child support, he agreed to increase the support to a set amount of $1,100 per month. Respondent further agreed that he would pay $146.70 monthly for health insurance and

˘3˘

$18.73 monthly for dental insurance. Respondent acknowledged that he understood each term of the settlement and further testified as follows:

"Q. Mr. McNeil, have you entered into this agreement freely and voluntarily?

A. Yes.

Q. Have I not advised that I have certain defenses that I wanted to present to the judge which may have saved you substantial money?

A. Yes.

Q. Notwithstanding that, you said [you] want to agree to a $40,000 arrearage?

A. That's right."

Petitioner and respondent both testified that they understood that a written order reflecting the settlement terms would be drafted and submitted to the court for entry and that, if the order were drafted to accurately reflect the terms as put on the record at the hearing, the court could enter the order with or without their signatures. Respondent's counsel presented petitioner with a $12,700 check, drawn on an Enrico Mirabelli Professional Corporation account, as the initial payment on the arrearage.

On December 16, 2004, petitioner moved to memorialize the settlement terms as presented to the court on August 5, 2004. The motion included a draft agreed order. On December 28, 2004, the parties appeared before the court for entry of the agreed order modifying the dissolution judgment. That same day, respondent moved to "reject or modify the terms of the agreed order," arguing that the settlement's support and custody modifications and the payment schedule on the arrearage were unconscionable and not in the children's best interests.[1] In part, respondent asserted that the increase

---

[1] That same day, and before the hearing, petitioner filed a response to respondent's motion. In

in his child support obligations was unconscionable because there had been no showing that he could financially sustain the increase and, in fact, he could not meet the revised obligations. The following discussion ensued:

"THE COURT: *** [Y]ou both agree then that the revised proposed order is in conformity with the transcript [from August 5] and then if I sign that, that's the end of that, right? We're done, I think? You don't have any objection to the entry? You don't claim it doesn't conform in some way, or there is some other problem?

MR. McNEIL: No, sir. I don't claim that it doesn't conform. I only claim that it's [sic] provisions financial, and with respect to modification of custody and in certain other smaller matters is unconscionable. As soon as this order is entered--well, since August 5th when we were before the court--

THE COURT: Right.

MR. McNEIL: Judge, I've tried to comply with the financial terms of the order and I have been unable to do so. I will be in non-compliance as soon as it is entered.

THE COURT: Okay. I mean, but you recognize at least on that day--and I think that's the last time I've seen you guys. I can't remember seeing you since.

---

her response, petitioner modified the draft agreed order to delete certain procedural provisions to which respondent had objected. Petitioner's response did not, however, substantively respond to respondent's unconscionability arguments.

MS. McNEIL-STEIN: Yes.

THE COURT: On any motions or anything. You both said that that was the agreement--

MR. McNEIL: Yes, sir.

THE COURT: --You had an attorney here, Mr. Mirabelli--

MR. McNEIL: Yes, sir.

THE COURT: So, at least as of that day--okay. So, I'm going to sign the order and then at least at that point then if you want to seek to modify it, you can start to take some action because otherwise we are kind of--I'm not really sure where we are here otherwise, okay?

MR. McNEIL: Okay. Just for the record--

THE COURT: Yes. I know. You've made it clear.

MR. McNEIL: I would like to be heard on unconscionability--

THE COURT: Well--

MR. McNEIL: --before the entry of the order.

THE COURT: You agreed to the order on August 5th, right?

MR. McNEIL: Yes, sir.

THE COURT: You guys asked for time to reduce it to writing. It's now the end of December. And so I'm going to sign this order and make it <u>nunc</u> <u>pro</u> <u>tunc</u> to August 5th and then anything after that, you can do whatever you think you need to do, but I'm going around in a circle the wrong direction here, okay?"

The court made no other comments regarding respondent's motion, and no memorandum opinion denying the motion was entered. The court entered the settlement order, modifying the dissolution

judgment, and dated the order <u>nunc</u> <u>pro</u> <u>tunc</u> to reflect an August 5, 2004, date of entry.  Respondent

did not file a subsequent motion to modify the judgment.  Instead, on January 27, 2005, respondent

filed a notice of appeal.

## B. Contempt Finding

On March 4, 2005, petitioner filed a second petition for rule to show cause, alleging that

respondent failed to comply with the agreement, as modified by the August 5, 2004, settlement, and

that he failed to pay child support in December 2004 and January and February 2005.  At the hearing

on the petition, respondent admitted that he was not in compliance with the agreement and agreed that

the petition be returnable <u>instanter</u>.  Then, at the hearing on the return of the rule, respondent testified

that there were two primary reasons for his failure to pay support in compliance with the order.  First,

respondent explained that the $12,700 payment to petitioner at the August 5, 2004, hearing was a loan

from one of his law partners.  Respondent agreed to repay the loan by working without compensation;

thus, his financial obligations to petitioner were increased while his revenue decreased by $12,700.

Respondent testified that, in order to keep his job, he felt he needed to repay the loan to his law firm

before paying support.  Second, respondent testified that, when he entered the agreement, he was

working on a case that occupied an estimated 80% of his time and from which he expected

compensation.  However, his client's money was held under an injunction that had not yet been lifted.

Respondent also explained that members of his firm share expenses, but not revenue.  Thus,

respondent felt that in order to hold onto his job,  he needed to cover his share of firm expenses

before paying child support.  Nevertheless, as a result of his working on an uncompensated basis and

his client's funds becoming unavailable, he was unable to pay his share of the firm's expenses in

January and February 2005.  Accordingly, his employment was to terminate effective March 15,

2005. Finally, respondent testified that he was also in arrears on child support owed to his second ex-wife and that he was forced to give up his apartment.

The trial court stated:

"I do find you in contempt. I find that your failure to pay the child support is wilful. I find this financial situation you're in is one of your own making entirely; that you've chosen to practice law in this fashion. That you have chosen to become employed in a firm where this is how it's set up as opposed to taking some type of salary employment. So I do find you in contempt."

The trial court stayed the mittimus to provide respondent 14 days to acquire and pay the owed support.

On March 21, 2005, respondent's motion for rehearing was denied. At the hearing, respondent was unable to pay the entire $4,850 he owed petitioner, and the mittimus was served. On April 20, 2005, respondent filed a second notice of appeal.

## II. ANALYSIS

Respondent argues that, despite his motion and request to be heard on the unconscionability and best interests issues, the trial court considered only one issue at the hearing to enter the order: whether the proposed order conformed with the settlement terms as read into the record on August 5, 2004. Respondent contends that the court erred by denying him an opportunity to be heard on the issues of unconscionability and the best interests of the children before entering the order incorporating the parties' settlement into the dissolution judgment. We agree and find that the trial court abused its discretion in denying respondent's motion without considering the unconscionability and best interests issues. See, e.g., In re Marriage of Riedy, 130 Ill. App. 3d 311, 313 (1985)

(modification of a divorce decree rests in the sound discretion of the trial court, and a court of review will not disturb its findings unless the evidence clearly so requires).

Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/502(b) (West 2004)) provides:

"The terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court <u>unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion</u> or on request of the court, <u>that the agreement is unconscionable</u>."  (Emphasis added.)

The statute anticipates that a court will consider the unconscionability of a settlement agreement upon a motion by one of the parties.  Here, the trial court denied respondent's motion and entered the settlement order without addressing the merits of respondent's unconscionability and best interests arguments.  While we are sympathetic to the time pressures and frustrations faced by trial courts, particularly in the realm of domestic relations, we find that the failure to address the merits of respondent's arguments was erroneous.

"A party alleging unconscionability of a settlement agreement must be permitted to present evidence relevant to that agreement ***."  <u>In re Marriage of Smith</u>, 164 Ill. App. 3d 1011, 1020 (1987).  In <u>Smith</u>, at a proveup hearing on an oral settlement agreement, the respondent testified that she understood and agreed to the settlement agreement's terms.  Shortly thereafter, she disavowed the agreement and urged the court not to enter the agreement, arguing that its maintenance and monetary awards were unconscionable.  The trial court entered the settlement order, noting the respondent's objection and stating that it found the agreement not unconscionable.  The respondent subsequently moved to vacate the order entering the supplemental judgment, again alleging

unconscionability and asserting that the financial results of the settlement left her destitute and her ex-husband financially advantaged. The motion to vacate was denied after an evidentiary hearing. The appellate court found that the trial court erred at the evidentiary hearing in excluding as irrelevant evidence that not all assets were disclosed prior to the prove up. Smith, 164 Ill. App. 3d at 1020-22. The court determined that the evidence might have affected the trial court's unconscionability finding. The court reversed the orders entering the supplemental judgment and denying the motion to vacate, and it remanded for a new hearing concerning the parties' relative economic circumstances resulting from the oral settlement agreement. Smith, 164 Ill. App. 3d at 1020-23.

In In re Marriage of Burch, 205 Ill. App. 3d 1082 (1990), the petitioner moved to vacate an oral prove up prior to the entry of a dissolution judgment, on the grounds that the property settlement agreement was unconscionable. At a hearing on the motion to vacate, the petitioner asked the court to allow further discovery based on newly discovered information relating to fraud and unconscionability of the agreement. The trial court denied the motion, stating that it had reviewed the agreement and found that it was not unconscionable. The appellate court held that the trial court abused its discretion in denying the motion without an evidentiary hearing. Burch, 205 Ill. App. 3d at 1096. In doing so, the court noted that "[d]ocumentary information in support [of the petitioner's claim] was submitted to the trial court for its perusal, which in and of itself was sufficient to require the court to hold an evidentiary hearing to establish the truth of the allegation." Burch, 205 Ill. App. 3d at 1089. The court found that the trial court erred in refusing to consider certain evidence in support of the petitioner's allegations pertaining to unconscionability. Burch, 205 Ill. App. 3d at 1092. Finally, the court noted that it made no difference that the petitioner's motion to vacate was made prior to the entry of judgment. "Although the case at bar involves a motion to vacate an oral

prove up and a hearing on the motion, rather than a post-judgment petition and hearing, pursuant to section 2--1401 of the Code of Civil Procedure [735 ILCS 5/2--1401 (West 2004)], the same legal and public policy principles logically apply." <u>Burch</u>, 205 Ill. App. 3d at 1095-96.

We acknowledge that this case does not involve fraud or the failure to disclose assets. Nevertheless, even in <u>Burch</u> and <u>Smith</u>, where the trial courts were reversed, the trial courts either held hearings on the motions to vacate or expressly found that the agreements were not unconscionable. Here, we have neither one. Respondent attached exhibits to his unconscionability motion, including a comprehensive financial statement pursuant to the court's local rules, and alleged that the financial terms of the agreement were so oppressive that he was unable to comply. No hearing was held to permit respondent to present evidence regarding the truth of his assertion, nor did the court discuss the agreement's financial ramifications with respondent during the December 28, 2004, hearing. The trial court's sole stated reason for denying the motion to reject the order was that respondent had agreed to the terms at the prove up. However, an argument that an agreement is unconscionable necessarily presumes the existence of an agreement. Thus, the trial court's statement that respondent agreed to the settlement's terms was nonresponsive to respondent's contention that the settlement was nevertheless unconscionable. Moreover, we cannot presume that, by entering the order, the court implicitly found that the agreement was not unconscionable or that it was in the children's best interests. There is no need or basis for such a presumption, because the trial court gave an explicit reason for denying the motion--the order conformed to the terms as read into the record at the proveup hearing--that had nothing to do with the unconscionability of the agreement.

Petitioner contends that the trial court did not err in "finding that the settlement agreement at issue was not unconscionable." However, she does not indicate where in the record such a finding was made, except to say that the trial court addressed respondent's unconscionability argument by

pointing out that respondent agreed to the settlement terms at the prove up and was represented by counsel. As discussed above, we do not agree that the trial court's confirmation that respondent agreed to the terms at the prove up constitutes consideration of whether the terms themselves were unconscionable. In any event, the inquiry into unconscionability requires a two-prong analysis, and the trial court must consider: (1) the conditions under which the agreement was made; and (2) the parties' economic circumstances resulting from the agreement. See Smith, 164 Ill. App. 3d at 1017. Here, even if the trial court arguably addressed the circumstances under which respondent made the agreement, it did not address the parties' economic circumstances resulting from the agreement.

Petitioner likens this case to In re Marriage of Chapman, 162 Ill. App. 3d 308 (1987), where an evidentiary hearing on a motion to vacate was denied as unnecessary because the trial court was thoroughly familiar with the allegations of the motion and extensively involved in the settlement negotiations, the motion was verified, and the court made a finding that the property settlement was not unconscionable when it orally entered the dissolution agreement. Petitioner asserts that the trial court here "recalled" and "was aware" of certain aspects of this case, including respondent's arguments, so a hearing was unnecessary. Petitioner does not provide any record citation to support her contentions. Moreover, we find that this case is distinguishable from Chapman. Here, although the motion was verified, the trial court had no integral role in the settlement negotiations and, critically, made no explicit finding that the agreement was not unconscionable.

Petitioner also asserts that the trial court recommended that respondent file a petition to modify the judgment, because it "was not buying [respondent's] argument that the settlement agreement was unconscionable." We have no way of knowing from the record whether the trial judge was "not buying" respondent's unconscionability argument, and we therefore cannot conclude that the reference to filing a petition to modify was in some way a reflection of the trial court's assessment of

the merits of respondent's arguments. And, while a motion to modify the judgment is an appropriate method for addressing compliance issues (see, e.g., In re Marriage of Steichen, 163 Ill. App. 3d 1074, 1080-81 (1987)), there is no reason why respondent had to wait until after the judgment was entered to move to reject the settlement terms. Burch, 205 Ill. App. 3d at 1095-96.

Finally, petitioner claims that the settlement terms pertained entirely to the minor children. Petitioner therefore suggests that the unconscionability issue is not properly before the court, because the Act provides that "[t]he terms of the agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds *** that the agreement is unconscionable." (Emphasis added.). 750 ILCS 5/502(b) (West 2004). Petitioner misinterprets the statute. The cited language does not mean that the court cannot find unconscionable an agreement with terms pertaining solely to children. Rather, the Act anticipates consideration as to whether the agreement as a whole is unconscionable and provides that, even if the agreement is not unconscionable, the court may still reject or modify the terms involving children. See, e.g., Smith, 164 Ill. App. 3d at 1017. In any event, this argument does not help petitioner, because the trial court arguably possessed a heightened obligation to address respondent's argument that the modifications were not in the children's best interests. See, e.g., In re Marriage of Ingram, 259 Ill. App. 3d 685, 689 (1994) ("modification of a child support obligation is a judicial function, and the court is obligated in a dissolution proceeding to protect the interests of the children involved"); Weber v. Weber, 77 Ill. App. 3d 383, 388 (1979) (when a separation agreement involves the welfare and support of children, the court has a duty to ascertain all of the pertinent facts and circumstances and to determine whether the award is fair and equitable).

In sum, we conclude that the trial court abused its discretion in denying respondent's motion without considering the merits of his unconscionability and best interests arguments. We reverse the

trial court's August 5, 2004, order entering the settlement agreement and remand this cause to the trial court for the purpose of addressing whether the agreement is unconscionable and in the children's best interests. Should the trial court find that the agreement is unconscionable or not in the children's best interests, the court should vacate the August 5, 2004, oral prove up and conduct further proceedings pursuant to section 502 of the Act. If, on the other hand, the trial court concludes that the agreement is not unconscionable and that the modifications are in the children's best interests, the settlement agreement may be approved by the court and reentered into the dissolution judgment.

In light of our conclusion that the settlement agreement was improperly, or at least prematurely, entered, we reverse the order holding respondent in contempt for failing to comply with the order. See, e.g., In re Marriage of Watling, 183 Ill. App. 3d 18, 22 (1989) (contempt order vacated when trial court erred in entering the violated child support order); see also Reda v. Advocate Health Care, 199 Ill. 2d 47, 63 (2002) (reversing contempt finding based on violation of invalid discovery order); In re Marriage of Bonneau, 294 Ill. App. 3d 720, 723 (1998) ("where the trial court's discovery order is invalid, a contempt judgment for failure to comply with the discovery order must be reversed").

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded with directions.

Reversed and remanded with directions.

BOWMAN and BYRNE, JJ., concur.