*In re* MARRIAGE OF CAROLYN PERRY, Petitioner-Appellant, and JOHN R. PERRY, Respondent-Appellee.

First District (1st Division)    No. 80-1361

Opinion filed May 11, 1981.

Melvin J. Cole and Beermann, Swerdlove, Woloshin, Barezky & Berkson, both of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellant.

Richard Altieri, of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner, Carolyn Perry, appeals from the trial court's denial of her motion to set aside an oral property agreement prior to its incorporation into a supplemental judgment for dissolution of marriage. The sole issue presented is whether the trial court erred in denying the motion. We find that the oral settlement disposing of her property and maintenance rights and setting child support should have been set aside and therefore reverse and remand for a full hearing on those issues.

The record reveals that on August 17, 1979, the trial court granted a judgment of dissolution of the parties' 16-year marriage and awarded petitioner custody of their 6 children, ages 6 to 15 years. A contested hearing on the questions of child support, maintenance and property division was set for September 26, 1979. On that morning petitioner's attorney, respondent and respondent's attorney held a conference for about 15 minutes in the hallway outside of the courtroom and out of the petitioner's presence. Thereafter petitioner's attorney related the terms of a proposed property settlement to petitioner to which she objected, saying that respondent had not accurately represented his assets and liabilities. Her attorney advised her to accept the settlement, telling her that since respondent was in a "cash business" it would be difficult to prove his actual income. The parties then went into the courtroom, and the trial court conducted a prove-up of the terms of the verbal agreement.

At the time of the prove-up, petitioner was unemployed and had executed an affidavit showing monthly living expenses for herself and the six children to be $3,428.65. Respondent did not contest the accuracy of that figure but claimed to have a net income of $400 per week. The principal terms of the agreement were (1) respondent would pay $262 per week for child support; (2) maintenance was waived by both parties; (3) petitioner would have sole title to the marital home, subject to the existing mortgage of approximately $36,000 and would assume the monthly payments in the amount of $460; (4) the parties would retain joint ownership of their summer home and share its expenses equally; (5) respondent would acquire sole ownership of certain real estate located in Florida and a motorboat; (6) respondent would retain sole ownership of his two restaurant businesses plus the building in which one of them was located, and assume mortgage payments thereon and any outstanding business loans; (7) each party was to retain one car; and (8) respondent was to pay the children's major medical bills and their college expenses. Both the marital home and the summer home were collateral for the mortgage on the restaurant building represented to be in the amount of $95,000. There were no appraisals done of the marital home, the restaurants, or the Florida lots, which were allegedly being purchased on an installment agreement.

After the prove-up but prior to the entry of a supplemental judgment, petitioner retained additional counsel to set aside the proceedings of September 26, 1979, on the oral settlement agreement and reset the matter for a contested hearing. At the hearing on her motion, petitioner testified that there had been no settlement agreement prior to the morning on which the contested hearing was scheduled. She claimed that her attorney, respondent and his attorney negotiated the terms of a settlement for about 15 minutes out of her presence; she did not participate at all. Her attorney returned to her and told her what she would get. She told her attorney that the terms were not fair and she could not live on $262 per week. She also believed that respondent's representations concerning his income and assets were not true; and she wanted a trial on the matter. Her attorney responded, however, that he felt there was no way he could disprove respondent's statements.

Petitioner further testified that, when the parties lived together, respondent gave her $329 per week, plus additional cash as needed. Out of that money, she paid for food, utilities and a small insurance policy. Respondent paid for the house mortgage, insurance matters, vacations, and for all other expenses. At the time of the hearing, petitioner had obtained employment and was earning $164.84 per week, but she could not support herself and the six children and was receiving financial assistance from her parents. There was additional evidence presented that the

mortgage balance which respondent assumed on the restaurant building and represented to be $95,000 was, in fact, $65,000; that the motor boat was not a gift but was purchased by respondent with marital funds and that respondent had paid for the Florida lots in cash, also with marital funds. Respondent testified that the restaurant mortgage balance was $82,000, that his net income at that time was $425 per week and his rent was $400 per month. The trial court denied the motion and entered a supplemental judgment incorporating the oral settlement agreement.

Petitioner relies on *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 103, in support of her argument that the trial court erred in not vacating the oral settlement agreement because it was (1) hastily contrived, (2) was not free from misrepresentation, (3) was challenged by petitioner before it became part of a final judgment, and (4) does not adequately provide for the support of the parties' six minor children.

The oral settlement agreement in *Crawford* provided for a division of the net proceeds from the sale of the marital home and alimony of $700 per month for 10 years for the wife who was unemployed. The two children born of the parties' 26-year marriage were ages 22 and 18. Although the wife was apparently not consulted or advised regarding the terms of the agreement prior to the prove-up, she testified at the prove-up that she was not subjected to any coercion or duress to enter the agreement. The wife testified at the hearing on the motion to vacate the agreement that she never agreed in principle to the terms of the oral settlement, and she informed her former attorney that the alimony payments would be inadequate and that she did not understand the significance and meaning of her prior testimony.

■■■ We acknowledged that although the law looks with favor upon the amicable settlement of property rights between a husband and wife prior to their divorce, a settlement agreement will be set aside and vacated if said agreement is procured by fraud, coercion, or if contrary to any rule of law, public policy, or morals. In ascertaining whether a particular settlement agreement violates public policy, reviewing courts not only focus on whether such contracts are free of actual fraud and coercion, but emphasis is also placed on whether they are reasonable, fair and sufficient in light of the station in life and the circumstances of the parties. We stated that "the settlement of property and alimony rights between married persons, particularly in situations involving long matrimonial relationships, cannot be concluded by the parties' oral consent when it is diligently challenged by one spouse before a decree has been entered." (39 Ill. App. 3d 457, 462.) Because the settlement agreement was hastily contrived in *Crawford* immediately before the prove-up and the wife not only expressed her aversion to it but immediately disavowed her prior consent to it, we concluded that the oral settlement disposing of her

property and alimony interests should have been set aside and in all fairness the wife should have her day in court. Accord, *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582.

Respondent argues that the trial court was correct in refusing to vacate the oral settlement agreement in reliance on *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 262 N.E.2d 88, *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 302 N.E.2d 201, and *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 386 N.E.2d 620. *Lagen* involved a situation where the wife failed to prove that she did not know the extent of her husband's assets and consequently did not establish the coercion or fraud which her motion alleged. *Lagen* is not controlling in the present case because it involved an attack, pursuant to section 72, on the validity of a divorce decree after it was entered. Ill. Rev. Stat. 1973, ch. 110, par. 72.

In *Filko*, after the prove-up of an oral property settlement agreement, the wife hired a new attorney to prevent the court from entering a decree. The trial court refused to allow her to present the motion and entered the decree. She then filed a motion to vacate within 30 days (Ill. Rev. Stat. 1969, ch. 110, par. 68.3); the trial court's denial of that motion was affirmed on appeal. In *Crawford*, we distinguished *Filko* factually because the parties negotiated for 2 years before the hearing and the hearing itself was preceded by 6 hours of conferences in which the parties, their attorneys and the trial judge participated in arriving at the oral settlement agreement. For the same reasons, we believe it is factually distinguishable from the instant case.

In *Horwich* the parties were divorced in Nevada after 11 years of marriage. Almost 3 years later, an Illinois court awarded custody of the only child to the husband and heard testimony concerning the terms of an oral property settlement. Prior to the entry of a final judgment, the wife filed a petition to stay the proceedings and to vacate the property settlement and set the case for trial. The trial court denied the petition and we affirmed. The *Horwich* agreement provided that the wife would retain possession of 4 paintings and the husband 61 paintings. In addition, the wife was to receive $16,000 in alimony over a several year period and $600 per month thereafter. We distinguished *Horwich* from *Crawford* on the grounds that in *Crawford*, the wife had no income except for her alimony to support herself and her children and that alimony was limited to a 10-year period. In *Horwich* the wife did not have custody of her child, her alimony was not limited to a period of years, and she had additional income and investment capital from her partial ownership of a commercial property. Further, the wife in *Crawford* was neither advised nor consulted during the settlement negotiations and expressed her dissatisfaction with the settlement terms before leaving the courtroom, whereas Mrs. Horwich participated in the all-day negotiations and did not express

her dissatisfaction with the settlement provisions until some time after her departure from the courtroom.

██ We conclude that the circumstances surrounding the settlement negotiations and the parties' situations in the instant case are more analogous to *Crawford*. As in *Crawford* we note that the settlement agreement here was the product of a 15-minute conference immediately before the prove-up hearing, that petitioner did not participate in the meeting and that she expressed her dissatisfaction with the agreement prior to and immediately after the prove-up. In addition, petitioner had no knowledge of the extent of respondent's assets or income; she had no outside income at the time of the prove-up and minimal income thereafter; and she had custody of six minor children. The record here reflects multiple disparities in the evidence concerning the value of the marital property, the source of the funds used for its purchase and the mortgage balances on various parcels. Further, respondent's testimony that his net income was $400 per week is inconsistent with the uncontroverted evidence that during the parties' marriage respondent gave petitioner over $329 per week for food and utilities and that he paid the house mortgage and all other expenses from other funds. We conclude that petitioner should have her day in court and that the oral settlement agreement disposing of her property and alimony interests and the support for the six minor children should have been vacated.

Accordingly, the order of the court denying petitioner's motion to set aside the oral settlement agreement is reversed, the trial court is directed to vacate the supplemental judgment concerning the property settlement, and this cause is remanded for hearing on the issues of child support, maintenance and division of the marital property.

Reversed and remanded with directions.

CAMPBELL, P. J., and GOLDBERG, J., concur.