*In re* MARRIAGE OF ARLENE CIERNY, Petitioner-Appellee, and RONALD CIERNY, Respondent-Appellant.

First District (3rd Division)   No. 1—88—0138

Opinion filed August 9, 1989.

Steven R. Lake & Associates, Ltd., of Chicago, for appellant.

Batler, Capitel & Schwartz, of Buffalo Grove, and Edward I. Stein, Ltd., of Northbrook, for appellee.

JUSTICE WHITE delivered the opinion of the court:

The respondent, Ronald Cierny, appeals from a judgment of the circuit court dissolving his marriage to the petitioner and ordering him to pay petitioner's attorney fees. Respondent also appeals an order finding him in contempt of court.

## FACTS

Respondent and petitioner were married on June 14, 1969. They had one child, Andrew, born May 30, 1979. On January 27, 1987, peti-

tioner filed an action seeking dissolution of the parties' marriage. A hearing on petitioner's motion for temporary support was scheduled for April 6, 1987; however, on that date respondent's attorney informed the court that the respondent no longer wished her to represent him and the case was continued until April 16 to give respondent an opportunity to obtain new counsel.

### APRIL 16, 1987

Respondent, petitioner, and their attorneys appeared and a prove up was held, at which petitioner testified that the respondent was guilty of mental cruelty. Petitioner also testified that she, respondent, and their attorneys had negotiated an oral settlement agreement.

Petitioner testified that under the settlement agreement: (1) petitioner would have sole custody of Andrew and respondent would have visitation rights; (2) respondent would pay the greater of 20% of his income or $400 per month in child support and provide insurance coverage for Andrew; (3) respondent would pay petitioner $200 per month in maintenance for a period of 24 months; (4) petitioner would assume responsibility for payment of the mortgage on the marital residence located in Arlington Heights, Illinois, and respondent would quitclaim his interest in the house to petitioner in exchange for $28,000; (5) respondent would prepare joint 1986 Federal and State income tax returns for the parties and any refund would be divided between the parties with 60% going to respondent and 40% going to petitioner; and (6) respondent would pay $1,500 of petitioner's attorney fees and each would be responsible for the balance of his or her own attorney fees.

Respondent then testified, stating that he was not offering a defense to petitioner's charge of mental cruelty. He also stated that he and his attorney had spent two hours going over the settlement agreement and that he believed that the agreement was fair and reasonable. At the close of the hearing, the trial court ordered that a judgment of dissolution setting forth the parties' agreement be prepared and submitted for his signature.

### MAY 13, 1987

On May 13, 1987, petitioner filed a motion seeking to have the judgment of dissolution entered *instanter*. At a hearing on that same date, the court was informed that respondent had hired a new attorney and that respondent intended to object to the entry of the judgment. The court pointed out that respondent had filed no pleadings indicating what objections he had to the judgment, but stated that in

the interest of justice, the matter would be continued to give respondent an opportunity to be heard. The court added that because petitioner had appeared and was ready to proceed with entry of the judgment and because respondent had previously given no indication that he intended to object, all fees incurred in future proceedings would be borne by respondent.

### MAY 15, 1987

On May 15, 1987, respondent filed a petition to vacate the April 16 prove up. Although respondent's petition has not been included in the record on appeal, it appears that it alleged that the prove up should be vacated because the settlement agreement was manifestly unfair, because no discovery was had prior to the prove up, and because respondent was under a mental impairment at the time of the prove up due to certain medication he was using.

At the hearing on respondent's petition, respondent testified that he believed the April 16 court appearance was for a hearing on petitioner's request for temporary relief and that prior to that date, he had not discussed settling the case with his attorney. Respondent also testified that on the morning of April 16, he met with his attorney, Lee Newell, prior to the hearing and was told that they might be able to settle the case. Newell then met with petitioner's attorney and afterwards told respondent that petitioner had agreed to give respondent 40% of the equity in the marital home (approximately $27,100) and that petitioner wanted respondent to pay $2,500 of petitioner's attorney fees. Respondent stated that he told Newell that he wanted 50% of the fair market value of the house and that he did not want to pay any of petitioner's attorney fees. Respondent also stated that after further negotiations it was agreed that petitioner would pay respondent $28,000 in exchange for a quitclaim deed to the house and that respondent would pay $1,500 of petitioner's attorney fees. Respondent also testified that petitioner's attorney proposed that they divide the 1986 tax refund 50-50, but that he insisted upon a 60-40 division. According to respondent, the settlement negotiations began in the hallway outside the courtroom, but after the negotiations had become "kind of lengthy," it was suggested that the parties and their attorneys continue their discussions in a conference room.

Respondent also testified that at the time of the prove up, he had been under psychiatric care for 16 months and that before the hearing he had taken his regular dosage of anti-anxiety and anti-depressant medications. There was also evidence that respondent, a certified public accountant with a master's degree in accounting, had left his job

with General Motors in January 1987, that he worked part time between January and April, and that he started full-time employment on April 21.

JUNE 2, 1987

The hearing continued on June 2, 1987. On that date, Lee Newell, respondent's former attorney, testified detailing his meeting with respondent on April 16 and describing the settlement negotiations. Newell stated that he explained the prove up to respondent, telling him what would occur, and that respondent seemed lucid and appeared to understand what was happening. Newell further stated that the negotiations lasted approximately 1½ hours and that during the course of the negotiations respondent told him that he was not employed but that he expected to be working full time in the near future. Newell stated that respondent also told him that the parties' home was worth $110,00 and that $31,000 was owed on the mortgage.

At the conclusion of the hearing, the trial court found that respondent had failed to provide any evidence in support of the allegations in his petition to vacate. The court stated that respondent had not shown how the lack of discovery prejudiced him, how he was affected by the medication he had taken, or why the settlement agreement was manifestly unfair. The court entered the judgment of dissolution and granted petitioner's attorney 14 days to file his petition for attorney fees.

SEPTEMBER 30, 1987

Subsequent to the June 2 hearing, respondent retained new counsel and filed a petition for a rule to show cause alleging that petitioner had failed to comply with the visitation provisions set forth in the settlement agreement. In addition, respondent filed a petition to vacate the judgment of dissolution, again alleging that at the time of the prove up he was confused and unaware of the nature of proceedings and also alleging that the settlement agreement was unconscionable and that he was inadequately represented during the negotiations and the prove up. On July 14, 1987, petitioner filed a response denying respondent's allegations and a petition for attorney fees incurred in connection with the motion to vacate the prove up. Petitioner also filed a petition alleging that respondent was in arrears in child support and maintenance payments and seeking enforcement of the terms of the judgment of dissolution.

Following a hearing held on September 30, the court entered an order denying respondent's petition to vacate the judgment of dissolu-

tion and instructing respondent to execute the quitclaim deed to the marital residence *instanter*. The court's order also provided that all pending petitions would be continued until December 7, 1987.

### DECEMBER 7, 1987

Prior to the hearing, petitioner filed a petition seeking to have respondent held in contempt of court for his failure to comply with the court's order of September 30. At the hearing, respondent informed the court that he had discharged his latest attorney and was appearing *pro se*.

Edward Stein, petitioner's attorney, then began presenting evidence on his petition for fees. After Stein testified concerning his qualifications and the amount of time expended, he attempted to question respondent about his employment and income; however, respondent refused to answer Stein's questions. The trial court granted Stein's petition for fees, stating that respondent had been given every opportunity to be heard and had failed to produce any evidence. The court concluded that, therefore, it had no alternative but to grant the fee petition.

Petitioner's attorney then questioned respondent concerning the arrearages in child support and his failure to execute the quitclaim deed to the marital home as required by the judgment of dissolution and the court's order of September 30. Respondent again refused to answer any questions and indicated that he would not sign the deed. Petitioner then testified that respondent's maintenance and child support payments were $3,810.73 in arrears and that, despite numerous requests, respondent had failed to make the required payments. Petitioner also testified that respondent had failed to provide insurance coverage for Andrew as required by the judgment of dissolution.

The court entered an order finding that respondent was in contempt of court for willfully refusing to comply with its orders. The court's order also awarded petitioner's attorney $7,750 in fees and provided that this amount, plus the arrearages in child support and maintenance, would be deducted from the $28,000 to be paid respondent upon execution of the quitclaim deed.

### DECEMBER 22, 1987

At the hearing on December 22, respondent appeared in court with his fifth attorney and purged himself of the contempt by signing the quitclaim deed and tendering proof of insurance coverage. At the close of the hearing, respondent was ordered to pay petitioner's attorney an additional $750 for fees incurred in connection with the De-

cember 7 hearing.

On December 31, 1987, respondent filed his notice of appeal from the June 3 order and judgment of dissolution, the September 30 order denying his petition to vacate, the December 7 order requiring him to pay petitioner's attorney fees and finding him in contempt of court, and the December 22 order awarding petitioner's attorney $750 in fees.

OPINION

The first issue we must address is the timeliness of respondent's appeal from the denial of his motion to vacate the judgment of dissolution. Petitioner contends that because respondent's appeal was filed more than 30 days after the trial court's September 30 order denying respondent's motion to vacate the judgment of dissolution, respondent's appeal from this order is untimely and must be dismissed. Relying on Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), respondent argues that the court's order of September 30, 1987, was not a final and appealable order because it reserved ruling on all pending petitions including petitioner's request for attorney fees.

Supreme Court Rule 304(a) provides that where multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. In *In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 449 N.E.2d 137, the Illinois Supreme Court considered the applicability of Rule 304(a) in dissolution proceedings. There, in ruling that a custody order was not a separate claim within the meaning of the rule, the supreme court stated that a petition for dissolution advances a single claim and that the numerous issues involved such as custody, property disposition, and support are merely questions that are ancillary to the main issue: the request for an order dissolving the parties' marriage. Therefore, the supreme court concluded that until all of the ancillary issues are resolved, the petition for dissolution is not fully adjudicated.

In *In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 453 N.E.2d 90, the appellate court, relying on *Leopando*, held that an order of dissolution reserving the allocation of attorney fees was not a final and appealable order. The court stated that like a custody order, an attorney fees judgment in a dissolution of marriage case is not a separate claim, but is integral to the order dissolving the parties' marriage. The court noted that the parties' liability for attorney fees is

similar to their liability for debts incurred during the marriage, in that both must be allocated to the parties before a reviewing court can determine if the trial court's decision concerning property and maintenance comports with the statutory requirements.

Respondent relies on both *Leopando* and *Derning* in support for his contention that his appeal was timely. However, we believe that neither of these cases is applicable.

In the present case, the judgment which dissolved the parties' marriage awarded child support and temporary maintenance, it contained custody and visitation provisions, it allocated attorney fees between petitioner and respondent, it provided for the disposition of the marital home, and it divided the parties' personal property. Thus, unlike *Leopando* and *Derning*, the judgment left no issues for future resolution.

Respondent filed his petition to vacate on July 6, 1987. Subsequently other motions were filed, including petitioner's request for attorney fees. Under Supreme Court Rule 303(a), the filing of respondent's petition to vacate within 30 days[1] of the judgment of dissolution extended the normal 30-day period for appealing the judgment until 30 days after the disposition of the last pending post-trial motion. (107 Ill. 2d R. 303(a).) The trial court's order of September 30 was a final disposition as to respondent's motion to vacate; however, all other pending motions were continued until December 7. Therefore, because these motions were not disposed of until December 22, 1987, any notice of appeal filed prior to that time would have been premature.

A similar conclusion was reached by this court in *In re Marriage of Janetzke* (1981), 97 Ill. App. 3d 418, 422 N.E.2d 914. There, the parties were divorced in 1972, petitioner was awarded custody of their three minor children, and respondent was ordered to pay $100 per week in child support. In 1978, respondent filed a petition seeking custody of the children and child support. In response, petitioner filed a petition seeking to have respondent held in contempt of court and a petition for attorney fees. On November 1, 1979, an order was entered granting respondent's petition for custody and continuing all remaining matters, including respondent's petition for child support and petitioner's petition for attorney fees. The trial court entered an order denying respondent's request for child support in February 1980, and in June 1980, the court ordered respondent to pay petitioner's at-

---

[1] In 1987, because July 4 occurred on a Saturday, Friday, July 3, was designated a legal holiday. Thus, the last day of the 30-day period following June 3 was July 6.

torney fees. In July 1980, respondent filed a notice of appeal from the February and June 1980 orders. On appeal, petitioner argued that this court lacked jurisdiction to review the February 1980 order. She contended that the order was a final judgment concerning the question of child support and that respondent's failure to file a notice of appeal within 30 days of the order deprived the court of jurisdiction.

The court found that a request for attorney fees in a matrimonial action is a claim within the meaning of Supreme Court Rule 304(a) and that because respondent's petition for child support, as well as both parties' petitions for attorney fees, was pending at the time of the February hearing, multiple claims for relief were involved and Supreme Court Rule 304(a) was applicable. The court also found that although the February 1980 order was a final judgment in that it disposed of the rights of the parties as to child support, because the order continued for hearing at a future date the petitions for attorney fees and did not contain the Rule 304 language that there was no just reason to delay enforcement or appeal, the February 1980 order did not become appealable until June 1980.

■ In the present case, respondent's motion to vacate, a petition for attorney fees, and several other claims were before the trial court at the time of the hearing on September 30, 1987. Although, as we stated above, the trial court's order of September 30 constituted a final decision as to the motion to vacate, it continued for hearing at a future date the other claims, including the petition for attorney fees. As in *Janetzke*, this order did not contain a finding that there was no just reason to delay enforcement or appeal and, therefore, we find that the order was not appealable until December when a final judgment was entered on all the claims before the court.

We turn now to the merits of respondent's appeal. Respondent first argues that the trial court abused its discretion when it denied his motion to vacate the prove up, approved the oral settlement agreement, and entered a judgment of dissolution.

■ In Illinois, the law looks favorably upon the amicable settlement of property rights between a husband and wife prior to the dissolution of their marriage. (*In re Marriage of Moran* (1985), 136 Ill. App. 3d 331, 483 N.E.2d 580; *In re Marriage of Perry* (1981), 96 Ill. App. 3d 370, 421 N.E.2d 274.) However, a settlement will be set aside if the court finds that the settlement agreement is unconscionable. (Ill. Rev. Stat. 1987, ch. 40, par 502(b).) A settlement agreement also will be set aside if it was procured by fraud, duress, or coercion or if it is in violation of any rule of law, public policy, or morals. *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582; *In re Marriage of Perry*

(1981), 96 Ill. App. 3d 370, 421 N.E.2d 274.

In *James*, the Illinois Supreme Court found coercion where, on the day of the trial, petitioner agreed to a settlement giving her only $25,000, and waiving her interest in nearly $200,000 in assets held by her husband, after her attorney told her that she had to accept the settlement because the case had been "assigned." Duress and coercion were found in *Moran*, where the trial judge told the petitioner that the agreement was the best she could get and that her attorney would lose if they went to trial and where, on the eve of trial, petitioner's attorney threatened to quit if petitioner did not sign a settlement agreement under which her attorney would be paid $25,000 by respondent and under which petitioner was awarded only a fraction of the parties' substantial assets. Coercion was also found in *Perry*, where 15 minutes before the trial, petitioner's attorney informed her of the terms of the settlement agreement negotiated by him, respondent, and respondent's attorney, and advised her to accept it, despite her contention that it misrepresented respondent's assets.

Respondent contends that the settlement agreement entered into in the present case should be set aside and the prove up vacated. Respondent claims that, as in *Perry*, the settlement was hastily contrived; that it was entered into at a time when he was mentally incapacitated; and that, like the petitioner in *Moran*, he was coerced into entering the agreement by the threats of his attorney. We disagree.

In *Perry*, the respondent, his attorney, and petitioner's attorney negotiated the terms of the settlement in a 15-minute meeting held out of petitioner's presence and without her participation. In contrast, the settlement negotiations in the present case lasted 1½ to 2 hours, included discussions among both parties and their attorneys, and concluded with a conference between the parties and their attorneys.

In response to respondent's contention that he was mentally incapacitated at the time of the hearing, we note that at the hearing on respondent's motion to vacate the prove up, it was respondent's testimony that he had been taking anti-anxiety and anti-depressant medication for 16 months prior to the prove up and that on the morning of the hearing he took his "regular dosage." In addition, there was no medical testimony as to the effect of this medication, and respondent himself failed to specify how the medication prevented him from knowingly agreeing to the settlement. Thus, we agree with the trial court's conclusion that respondent failed to establish that his mental condition at the time of the hearing required that the prove up be vacated.

■ Respondent's claim of coercion is based on a statement made

by his former attorney, Lee Newell, during the course of the settlement negotiations. At the hearing on respondent's motion to vacate, both respondent and Newell testified that during the settlement negotiations, respondent stated that, in exchange for executing the quitclaim deed, he wanted to receive 50% of the fair market value of the house, without a deduction for the mortgage. Newell testified that he told respondent that this request was unreasonable and that if respondent was going to be "bullheaded," Newell was not interested in representing him.

We do not believe that Newell's statement constituted a threat or that it was made in an attempt to coerce respondent into settling. Further, we do not believe that there is any other evidence in the record that can support a claim of coercion or any evidence that the settlement was procured as a result of fraud or duress.

■ In ascertaining whether a particular settlement agreement should be vacated, courts focus not only on whether the agreement is free of fraud and coercion, but also whether the agreement is reasonably fair and sufficient in light of the station in life and the circumstances of the parties. (*Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 103.) In *Crawford*, as in *James* and *Moran*, the party seeking to set aside the settlement agreement was an unemployed housewife who was unaware of the full extent of her spouse's income and assets and who had little input into the settlement negotiations. However, in *Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 368 N.E.2d 178, the appellate court upheld a settlement agreement entered into after a 1½-hour meeting held the day before the hearing. The court based its decision, in part, on evidence that petitioner had an above-average understanding of the bookkeeping system used in the family's farm business, evidence that petitioner kept financial records for the family living expenses and for the farm expenses, and evidence that she knew the extent of the family's assets.

■ In the present case, the record shows that respondent was a certified public accountant with a master's degree in accounting and there was evidence that respondent prepared the parties' Federal and State income tax returns. Thus, respondent's circumstances are more akin to those of the spouse in *Beattie* than those of the spouses in *Crawford*, *James*, and *Moran*.

In addition, we note that despite respondent's claim that the inequity of the settlement agreement is shown by the fact that it was entered into without obtaining an appraisal of the marital home, and by the fact that respondent was unemployed at the time of the prove up, respondent never presented any evidence of the value of the house,

nor did he demonstrate that his estimate of $110,000 was inaccurate. As for respondent's claim that the agreement was unfair in light of his unemployment, Newell testified during the hearing on respondent's motion to vacate the prove up that, on the day of the prove up, respondent told him that he expected to be working full time soon, and respondent himself testified that he was self-employed at the time of the hearing and that he started working full time on April 21, five days after the prove up.

Respondent next argues that the trial court erred in holding him in contempt of court for failing to make the court-ordered child support and maintenance payments and for failing to provide insurance coverage for his son. Respondent points out that in order for conduct to be contumacious it must be willful and argues that, because his nonpayment was due to the fact that he was unemployed, his action was not willful.

■■ ■ Initially it should be noted that at the December 7 hearing, respondent was held in contempt of court not just for failing to pay child support and maintenance, but also because of his refusal to execute the quitclaim deed and his failure to prepare and sign the parties' 1986 income tax returns. A party is in contempt of court when he willfully violates an order of the court. (*In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 507 N.E.2d 912.) We believe that the record in the present case clearly establishes that respondent willfully refused to comply with the trial court's order to sign the quitclaim deed to the marital home.

In addition, the failure to make payments required by a divorce decree is *prima facie* evidence of contempt, and once the failure to pay is shown, the burden then shifts to the alleged contemnor to show that the conduct was not willful. (*Taapken v. Taapken* (1976), 39 Ill. App. 3d 785, 350 N.E.2d 794.) If the party establishes that he is unable to pay, he should not be found guilty of contempt. *In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 507 N.E.2d 912; *Taapken v. Taapken* (1976), 39 Ill. App. 3d 785, 350 N.E.2d 794.

■■ In the present case, there was no evidence whatsoever of respondent's inability to make the child support and maintenance payments. Petitioner testified that the payments had not been made, thereby presenting *prima facie* evidence of contempt and shifting the burden to respondent to prove his inability to pay. However, respondent refused to answer any questions concerning his income or his employment. In light of his actions, respondent cannot now argue that the trial court erred in failing to take into consideration the fact that he was unable to make the payments due to his unemployment.

Respondent's final argument concerns the propriety of the trial court's fee award. Respondent contends that it was error to order him to pay petitioner's attorney fees despite his clear inability to do so. Respondent points to the trial court's statement on May 13, 1987, that all fees would be borne by respondent and argues that this demonstrates that the trial court did not follow the applicable law in awarding fees. We disagree.

■■ ■ Section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 508) provides that a court may order a spouse to pay a reasonable amount for the costs and attorney fees incurred by the other spouse in connection with the maintenance or defense of any proceeding or the enforcement or modification of any order or judgment under the Act. To justify the award of fees, it must be shown that the party seeking this relief is financially unable to pay and that the other party is able to do so; however, when a party does not request a hearing on his ability to pay or his opponent's inability to pay, the right to such a hearing is waived and the court may base its decision on the financial conditions of the parties as shown by the record. (*Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288; *Moore v. Moore* (1977), 53 Ill. App. 3d 228, 368 N.E.2d 545.) The decision of whether to grant a request for fees rests in the sound discretion of the trial court and will not be reversed unless that discretion is clearly abused. *Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.

■■ In the present case, respondent did not request a hearing on his ability to pay petitioner's attorney fees and he made no effort to establish that he was unable to do so. Despite this, the trial court gave the respondent a full opportunity to be heard on the question of whether he should be required to pay petitioner's attorney fees.

The fee petition filed by Edward Stein, petitioner's attorney, alleged that the fees had been incurred because of respondent's actions, that petitioner could not afford to pay the fees, and that respondent was employed and well able to pay. The hearing on the petition was held on December 7, 1987. Respondent appeared *pro se* at this hearing, and the record shows that the trial court took pains to explain to respondent the nature of the hearing and how he should proceed. The court informed respondent that Stein would attempt to establish what services he had rendered and the amount of time he expended and that to defeat Stein's claim, respondent would have to demonstrate that the time or services were excessive or unreasonable or that respondent was unable to pay. After respondent repeatedly stated that he was not concerned about the time expended or services rendered

by Stein, the court allowed Stein to testify about his qualifications, the work he performed, and the fees he customarily charged. Stein then attempted to cross-examine respondent about his ability to pay the fees; however, respondent refused to answer any questions concerning his employment or income. Thus, contrary to respondent's assertion that he demonstrated a clear inability to pay the fees, because of his refusal to respond to Stein's question, the record was devoid of any evidence of respondent's financial condition at the time of the hearing.

In *Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 416, 259 N.E.2d 282, the Illinois Supreme Court affirmed an award of attorney fees which defendant alleged was entered "without any evidence, without any testimony, without any hearing, and despite the absence of the defendant," where the record showed that defendant was present by his attorney and that when defendant was directed to cross-examine witnesses and present evidence, he refused to do so. Similarly, in the present case, the lack of evidence of respondent's ability to pay is the direct result of his refusal to present evidence of his financial condition and, in light of this fact, we find that respondent has waived the issue of his ability or inability to pay the attorney fees.

We also find that the order requiring respondent to pay the fees incurred in connection with the December 7 hearing was proper. At that hearing, petitioner alleged that respondent had failed to make child support and maintenance payments and had refused to execute the quitclaim deed to the marital home, as required by the judgment of dissolution. The trial court agreed and found respondent in contempt of court for his failure to comply with its orders.

■■ ■ It is well settled that a party who must seek court enforcement of the terms of a judgment of dissolution is entitled to reasonable attorney fees, even absent a showing of that party's inability to pay the fees and the other party's ability to pay, where the failure to comply with the terms of the judgment is without cause or justification. (*In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152; *In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 478 N.E.2d 537.) Because the primary prerequisite to any contempt finding is willful, contumacious conduct, it follows that a finding that a party is in contempt of court for failing to comply with a court's orders carries with it an implicit finding that the failure to comply was without cause or justification. (*In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 507 N.E.2d 912.) Accordingly, because respondent was found in contempt of court at the December 7 hearing for his willful refusal to comply with the trial court's orders, the trial court

correctly found that petitioner was entitled to an award for attorney fees incurred in connection with the hearing.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

FREEMAN, P.J., and RIZZI, J., concur.