*In re* MARRIAGE OF KATHY DIANE FREY, Petitioner-Appellee, and ROBERT DALE FREY, Respondent-Appellant.

Fifth District    No. 5—91—0836

Opinion filed March 1, 1994.—Rehearing denied March 29, 1994.

CHAPMAN, J., concurring in part and dissenting in part.

John R. Sprague, Sr., of Sprague & Sprague, of Belleville, for appellant.
Roza Gossage, of Belleville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent, Robert Dale Frey, appeals from an order of the circuit court of Madison County determining the assignment and division of property, maintenance, custody, child support, and the award of attorney fees to petitioner, Kathy Diane Frey. In this cause, respondent raises the following nine issues: (1) whether the trial court erred in finding that the parties did not enter into a marital settlement agreement; (2) whether the trial court erred in finding that respondent dissipated marital assets; (3) whether the trial court erred in awarding petitioner $23,500 as half the net equity in the marital home and in accelerating payment thereof upon either the remarriage or cohabitation of respondent with another adult; (4) whether the trial court erred in finding petitioner lacked sufficient financial resources, experience, and vocational training to provide for her needs in the standard of living established and to contribute to the support and maintenance of the children; (5) whether the trial court erred in refusing to make petitioner pay child support at the time of the hearing but instead ordering a review of the matter in one year; (6) whether the trial court erred in giving physical custody

of the minor children to petitioner as specified in the joint parenting agreement where no joint parenting agreement was entered and respondent was designated custodial parent; (7) whether the trial court erred in ordering respondent to pay $900 toward petitioner's attorney fees; (8) whether the trial court erred in allowing the expert testimony of James C. Whitt, real estate appraiser; and (9) whether the trial court's award of maintenance and division of property are contrary to the law and the evidence presented. We affirm in part and remand with directions for clarification concerning custody and visitation.

The parties were married on June 9, 1973. Two children were born of the marriage, Robert Dale Frey III, born September 1, 1973, and Brian Matthew Frey, born July 17, 1977. On July 25, 1990, petitioner filed a petition for dissolution of marriage, and respondent filed a cross-petition. Petitioner's original attorney withdrew, and new counsel entered her appearance on November 14, 1990. Several interrogatories were sent back and forth between the parties before and after the original attorney for petitioner withdrew.

The parties were married when petitioner was 17 years old. During the marriage, petitioner only had minimal employment. At one point, petitioner worked for a nursing home for three or four months. She quit that job because respondent requested she stay home and take care of the children. On another occasion petitioner worked as a recess aid at her oldest son's grade school. On January 2, 1990, petitioner accepted a position at an insurance company for which she is paid a little over $11,000 per year. Respondent is a longtime railroad employee and at the time of these proceedings earned over $34,000 per year.

At a hearing on February 28, 1991, the parties stipulated to joint custody, with respondent as the custodial parent and petitioner receiving reasonable visitation. A joint parenting agreement was to be entered, but the record does not contain it. Other hearings were held on the issues in contention. The matter was taken under advisement. On July 23, 1991, the trial court entered an order dissolving the parties' marriage and finding that: respondent failed to establish by clear and convincing evidence that the parties entered into a marital settlement agreement; petitioner contributed to the preservation and appreciation of the parties' property; petitioner lacked sufficient financial resources, experience, or vocational training to provide for her own needs in the standard of living established during the marriage; and petitioner was presently unable to contribute to the

support and maintenance of the children. The issue of child support to be paid by petitioner was reserved for one year. Respondent, as custodian, was ordered to pay all the children's expenses and was given the two tax exemptions. Personal property was divided between the parties. Petitioner was awarded 40% of joint checking and saving accounts, certificates of deposit, stocks, and bonds while respondent was awarded the other 60%. Petitioner was awarded half the marital portion of respondent's railroad pension. Due to the disparity in the parties' incomes, respondent was ordered to pay all debts incurred during the marriage, except those debts incurred individually by petitioner after the parties' separation. Respondent was ordered to maintain health coverage on petitioner for one year should none be available through her employer. Respondent was also ordered to pay petitioner $100-per-month maintenance for 24 months and $900 toward petitioner's attorney fees, which totaled $2,880. Petitioner was awarded half the net equity in the parties' marital real estate, $23,250. This amount was payable fully or in installments on or before Brian's eighteenth birthday or upon the sale or rental of the residence or upon respondent's remarriage or cohabitation with another adult. A subsequent order filed October 28, 1991, found that even if respondent's exhibit No. 2 could be considered a marital settlement agreement, the agreement was unconscionable. The trial court also found that respondent dissipated marital assets in a savings account valued over $18,000. The trial court found that, of the $18,000, approximately $9,000 was used to purchase the mobile home awarded to petitioner, but that respondent did not satisfactorily show the remaining sums were spent for the benefit of the family.

The main issue in contention throughout the proceedings was whether the parties entered into a marital settlement agreement, as documented in petitioner's exhibits numbered 1 and 2 and incorporated into respondent's exhibit No. 2. Petitioner admitted that the parties tried to negotiate on their own in order to reach a settlement; however, petitioner testified that with regard to petitioner's exhibits No. 1 and No. 2, these were "lists" that were written at an extremely emotional time. According to petitioner, respondent asked her what it would take to get out of the marriage, and she told respondent a number of things. At a hearing on May 7, 1991, petitioner testified that respondent was extremely angry during the parties' discussion and writing of the lists. Petitioner testified that respondent gave her blank pieces of paper and a pen and told her to write down what he told her. She did so because she knew something had to be done.

When petitioner requested other things, respondent asked her if she was sure she needed them. Petitioner would always respond "No." Respondent admitted that both parties were upset during this negotiation. About a week after the lists were drawn up, the parties went to an attorney picked out of the telephone book and took the lists. Both were trying to get a divorce using one attorney in order to cut down on cost and to get the matter completed quickly. Later, after a settlement was prepared, petitioner refused to sign it because it did not mention anything about the parties' savings accounts. At that point, petitioner sought separate counsel.

A two-bedroom mobile home costing approximately $9,500 was purchased for petitioner prior to obtaining her own attorney. Petitioner was also in possession of the parties' 1986 Cavalier at this time. Both the mobile home and the Cavalier were assigned to petitioner as part of the alleged settlement agreement. During hearings in this matter, petitioner conceded she always wanted respondent to remain in the marital home with the parties' two boys. Respondent argued at the trial level and contends herein that the agreement drawn up by the parties' original attorney, which incorporated the lists in petitioner's exhibits No. 1 and No. 2, was a valid settlement agreement and should be followed. Accordingly, the first issue we are asked to consider is whether the trial court erred in finding that the parties did not enter into a marital settlement agreement.

Respondent argues that the facts indicate that the parties agreed to the settlement as shown by petitioner's exhibits No. 1 and No. 2. To that end, a two-bedroom mobile home was purchased for petitioner, which she accepted. The parties were then bound by the agreement, and petitioner should not be allowed to change her mind. Petitioner responds that petitioner's exhibits No. 1 and No. 2 do not show a settlement agreement but rather show lists written out by petitioner at respondent's direction made under embattled conditions which cannot be found to be a valid and binding agreement. We agree with petitioner.

While it is well settled in Illinois that the law looks with favor upon the amicable settlement of property rights between a husband and a wife prior to their divorce, a settlement agreement will be set aside if the agreement was procured by fraud or coercion or contrary to any rule of law, public policy, or morals. (*Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 461, 350 N.E.2d 103, 107; see Ill. Rev. Stat. 1989, ch. 40, par. 502.) In determining whether a settlement agreement violates public policy, reviewing courts focus on whether such a contract is free from actual fraud or coercion and also whether

it is reasonable, fair, and sufficient in light of the parties' circumstances and station in life. *In re Marriage of Perry* (1981), 96 Ill. App. 3d 370, 373, 421 N.E.2d 274, 276.

■ Here, both parties agree that they were upset when these lists were written. Respondent admits that petitioner was crying at the time. Petitioner testified that she wrote down what respondent told her to write, but that the list did not reflect a complete agreement. Petitioner's exhibit No. 1 clearly shows that some of what was written was not agreed to by the parties. For example, next to the words "Bedroom set from upstairs" is written "*No*." Such markings cloud the issue whether the parties agreed to the lists as written. Moreover, the parties were married for 17 years, and the lists leave out many of their assets, including savings and checking accounts, stocks and bonds, and pension rights. Petitioner expressed her dissatisfaction with the agreement early in the proceedings and sought separate counsel to protect her interests. Reviewing the record as a whole, we cannot say that the trial court erred in determining that respondent failed to prove the parties entered into a binding marital settlement agreement. We also agree that even if such lists show an agreement, the agreement as written was unconscionable when considering the parties' station and circumstances in life.

Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) states that the terms of an agreement between the parties are binding unless the court determines that the agreement is unconscionable. (Ill. Rev. Stat. 1989, ch. 40, par. 502(b).) "[T]he inquiry into unconscionability involves at least two separate considerations: one, the conditions under which the agreement was made [citations] and two, the economic circumstances of the parties resulting from the agreement ***." (*In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 972, 451 N.E.2d 915, 918.) Here, the parties were married for a considerable period of time during which petitioner had virtually no work experience outside the home. Petitioner will never be able to bridge the gap between the parties' incomes. Considering these facts while reading the proposed settlement agreement, we come to the conclusion reached by the trial court, that the settlement agreement was unconscionable.

The second issue is whether the trial court erred in finding that respondent dissipated marital assets. The trial court concluded that respondent dissipated marital assets when he spent $18,000 from the parties' savings account. The trial court found that respondent "took approximately $9,000 from said account and purchased the mobile home awarded to the wife[ ] but did not show or account to the satisfaction of this court that the remaining sums were spent for the ben-

efit of the family unit." Respondent contends that he produced exhaustive proof as to the disbursal of funds in the savings account. He argues that he produced evidence of outlays totaling $28,681.96, including the $9,500 paid for the mobile home. Moreover, respondent contends that dissipation cannot be found where the spouse charging dissipation acquiesced in the expenditure, such as petitioner's agreeing to the withdrawal of money so that a $9,500 mobile home could be purchased for her. Petitioner responds that respondent's list of outlays was self-serving and, when carefully scrutinized, does not support respondent's position. We agree with petitioner.

Section 503(d)(1) of the Act allows a court to take into account a party's dissipation of marital assets. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(1).) Dissipation is the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage occurring at a time that the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1019, 471 N.E.2d 1008, 1011.) A finding of dissipation is possible even though the dissipating party did not derive personal benefit from the dissipation of the asset. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) A trial court's finding regarding the allocation of marital property, including making allowances for dissipation, will not be reversed absent an abuse of discretion. *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.

■ In the instant case, the trial court found that the $9,500 payment for the mobile home was reasonable and agreed to by the parties, but that additional amounts spent were not agreed to by petitioner, and that respondent's evidence failed to show such payments were for benefit of the family unit. After reviewing the evidence, we cannot say the trial court abused its discretion. Respondent was unable to show receipts for all purchases, and extremely large expenditures were made without consulting petitioner. First, for example, respondent purchased a 1988 pickup truck for his son in the amount of $5,889.13. This expenditure was not agreed to by petitioner. The fact that the parties' son received the truck is of little consequence. Respondent reaped the benefit of purchasing his son a truck with money acquired during the parties' marriage, but petitioner was not allowed in on the decision to purchase a vehicle for her son or the actual purchase of this truck. Second, respondent paid off his Discover credit card bill of $2,474.73, which was for purchases made for and during a trip to Las Vegas made by respondent. Petitioner was not on the trip. Third, respondent listed all types of payments made for day-to-day living expenses but does not show how his employment income was used during the same period

of time. The only purchase petitioner acquiesced in was the purchase of the mobile home, but there is no evidence that she acquiesced in the spending of the remaining $9,000 in the account. After reviewing the record, we cannot say that the trial court erred in finding that respondent dissipated approximately $9,000 in marital assets.

The third issue is whether the trial court erred in awarding petitioner $23,250 as half the net equity of the marital home and in accelerating payment thereof upon either the remarriage or cohabitation of respondent with another adult. Respondent contends that the trial court erroneously awarded petitioner $23,250 because such an award was contrary to the agreement of the parties. We have previously determined, however, that there was no binding agreement between the parties. Respondent also contends that the award of $23,250 was completely out of proportion considering the facts of this case. Respondent notes that the purchase price of the house in 1973 was $25,000, and respondent paid $2,500 for the down payment out of nonmarital funds. The house is in need of several repairs and, at the time of the hearing, retained a mortgage balance of $10,800. Petitioner wanted respondent to remain in the home so the children could continue to live there. Petitioner received a $9,500 mobile home in which to live and has no rent or mortgage payment. Under these facts, respondent contends it was error for the trial court to award any portion of equity in the marital home to petitioner. Petitioner responds that the award is not excessive in light of the evidence from the appraisers and the tax bill. We agree with petitioner.

The standard of review in determining whether error has been made in apportioning marital property is whether the trial court abused its discretion. An abuse occurs only where no reasonable person would take the view adopted by the trial court. (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 618, 434 N.E.2d 811, 828.) Here, the trial court allowed respondent, the custodial parent, to retain the marital residence but determined petitioner should receive half the equity in the home. The trial court was given several methods by which to determine the value of the marital home.

Respondent submitted an appraisal completed by Luke Allen, age 21, who attended appraisal classes at a junior college. He had two years' experience appraising homes at the time of the hearing. Allen appraised the marital home at $37,000. The 1989 real estate tax bill for the property listed the fair market value of the property at $47,910. Petitioner's appraisal was completed by James C. Whitt, an appraiser since 1979. He appraised the property at $56,000. There was also testimony that the parties purchased the home for $25,000 in 1973, but respondent's contention that $25,000 should be the value of the house today is without merit.

■ The trial court apparently found petitioner's appraisal to be the most reliable and valued the marital home at $56,000. The trial court then deducted the remaining mortgage, found half the net equity to be $23,250, and awarded petitioner that amount. Under the facts presented we cannot say no reasonable person would take the view adopted by the trial court, and thus, we affirm the trial court's determination in this regard. We also find no error in the trial court's decision to accelerate payment upon respondent's remarriage or cohabitation with another adult.

The fourth issue is whether the trial court erred in finding petitioner lacked sufficient financial resources, experience, and vocational training to provide for her needs in the standard of living established during the marriage and to contribute to the support and maintenance of the children. Respondent contends that the trial court's finding in this regard is contrary to both the law and the evidence. Respondent points out that petitioner is employed and lives in a mobile home purchased for $9,500 out of marital assets, so she has no house or rent payment. Respondent, on the other hand, has a $10,800 mortgage and virtually no money in his savings or checking accounts. Respondent contends the evidence shows he could barely keep up with his bills. Respondent argues the trial court's order that respondent pay petitioner $100 per month for 24 months for maintenance was in error. Petitioner contends that the facts support the trial court's findings and that the award of maintenance was not in error. We agree with petitioner.

■ In the instant case the parties were married for approximately 17 years during which time petitioner gained virtually no work experience. At the time of dissolution, petitioner had obtained employment but was making only one-third of respondent's salary. On the other hand, respondent was named custodial parent of the parties' two children, subject to petitioner's visitation. All his bills were paid, except what he was ordered to pay petitioner. Moreover, respondent would be supporting three people rather than four. After reviewing the record as a whole, we see no error in the trial court's award of maintenance or in its decision not to order petitioner to pay child support at the time of the hearing. The trial court's findings that petitioner lacked sufficient financial resources, experience, and vocational training to provide for her needs or to contribute to the support and maintenance of the children is supported by the record.

The fifth issue raised is whether the trial court erred in refusing to make petitioner pay child support but rather ordering a review of the matter in one year. Respondent contends the trial court should have awarded him 25% of petitioner's net income as child support as

set forth in the guidelines. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(1).) We disagree.

■ Section 505(a)(2) of the Act states that the guidelines shall be applied "unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines." (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2).) Here, the trial court specifically found:

"2. That Plaintiff lacks sufficient financial resources, experience, or vocational training to provide for her needs in the same standard of living as that established during the marriage and this Court finds that she could not, at this time[,] support herself and provide support for the children. This Court finds on the other hand that the Defendant is an able[-]bodied man well able to support himself and the children[ ] and provide maintenance to the Plaintiff, and that is the basis for this Court awarding maintenance to the Plaintiff and holding in reserve the issue of child support and the amount of said child support at this time."

We have reviewed the record and find that it sufficiently supports the trial court's reasons for denying child support and reserving the matter for future consideration. Thus, we will not alter the trial court's findings with regard to child support.

■ The sixth issue presented is whether the trial court erred in giving physical custody of the minor children to petitioner where no joint parenting agreement was entered and where respondent was designated custodial parent in contemplation of an agreement. We agree with respondent that the court order of July 23, 1991, is ambiguous, in that it makes respondent the custodial parent but gives petitioner physical "custody" of the children as specified in a joint parenting agreement. No joint parenting agreement is contained in the record. Therefore, we remand for clarification of the issues of custody and visitation.

The seventh issue is whether the trial court erred in ordering respondent to pay $900 of petitioner's attorney fees. Respondent again argues that the evidence showed that petitioner was employed and that he was barely able to cover his own bills, and thus, it was error for the trial court to order respondent to pay $900 toward petitioner's attorney fees. We disagree.

■ An award of attorney fees rests within the sound discretion of the trial court. (*In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 851, 408 N.E.2d 418, 424.) The trial court concluded that petitioner was unable to support herself in the lifestyle to which she was accustomed during the marriage. The disparity in the parties' income is substantial, and we cannot say the trial court erred in ordering re-

spondent to pay $900 in petitioner's attorney fees, which were found to be $2,280.

The eighth issue we are asked to address is whether the trial court erred in allowing the expert testimony of James C. Whitt. Respondent contends that allowing Whitt to testify violated Supreme Court Rule 220 (134 Ill. 2d R. 220) because Whitt was not disclosed as an expert in conformity with the rule.

Rule 220 provides, in pertinent part:

"(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties[,] the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed. The schedule established by the trial court will sequence the disclosure of expert witnesses in accordance with the complexities of the issues involved and the burdens of proof of the respective parties as to those issues. All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. Upon disclosure, the expert's opinion may be the subject of discovery as provided in paragraph (c) hereof. Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (134 Ill. 2d R. 220(b)(1).)

The disposition of sanctions under Rule 220 lies within the sound discretion of the trial court. (*Fischer v. G&S Builders* (1986), 147 Ill. App. 3d 168, 172, 497 N.E.2d 1022, 1025.) The discretion given the circuit court is broad and will not be interfered with unless it appears to have been abused. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213.) In determining whether to allow or exclude the expert testimony, the circuit court may

consider the following factors: surprise to the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection to the testimony, and the good faith of the party calling the witness. *Renfro*, 155 Ill. App. 3d at 162, 507 N.E.2d at 1231.

■ Assuming Rule 220 applies in divorce actions, which we need not address herein, we find no abuse of discretion in the trial court's determination to allow Whitt to testify. The record shows and the parties agree that no schedule of disclosure of experts was set forth in the instant case. During discussion of a possible Rule 220 violation, petitioner's attorney told the trial court that respondent's attorney received a copy of Whitt's appraisal, and she gave him one when she received it. Respondent's attorney did not deny this. The trial court then allowed Whitt to testify as an expert because respondent's attorney was aware of the report and had a copy of it. There was no error under these circumstances in allowing Whitt to testify.

■ The final issue we are asked to consider is whether the trial court's award of maintenance and division of property is contrary to the law and the evidence presented. Respondent contends that the property should have been divided as the parties agreed in the marital settlement agreement. As previously determined, there was no binding marital settlement agreement between the parties. Therefore, the standard of review in determining whether error has been made in apportioning marital property is whether the trial court abused its discretion. An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. (*Milovich*, 105 Ill. App. 3d at 618, 434 N.E.2d at 828.) Likewise, the amount and duration of a maintenance award lies within the sound discretion of the trial court for whose judgment we will not substitute our own unless no reasonable man would have taken the same view. (*In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 265, 486 N.E.2d 267, 275.) We find no abuse of discretion in the trial court's award of maintenance or in its division of property.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed with regard to the division of property, maintenance, attorney fees, and child support; with regard to custody and visitation, the judgment is remanded for clarification.

Affirmed in part, remanded with directions.

LEWIS, P.J., concurs.

JUSTICE CHAPMAN, concurring in part and dissenting in part: I cannot agree with the majority's resolution of the Rule 220

issue. Respondent's request to produce of September 4, 1990, requested that petitioner produce the names and addresses of all witnesses petitioner intended to use. Petitioner concedes that she did not provide respondent with the name of James Whitt in response to the request to produce. While there is no dispute that petitioner furnished respondent with a copy of Whitt's appraisal at Whitt's deposition, respondent was not given a copy of Whitt's resume or advised that he would be called as an expert to testify at trial.

Because of petitioner's failure to disclose Whitt as an expert prior to trial and to provide respondent with Whitt's resume, respondent was prejudiced in his ability to cross-examine Whitt and to rebut his testimony through his own expert, Luke Allen. Respondent was not provided a copy of Whitt's resume until the day of trial. The majority seems to imply that Whitt's testimony was not prejudicial in that respondent was furnished with a copy of Whitt's appraisal prior to trial. What the majority fails to point out is that James Whitt's testimony was more than a simple explanation of his appraisal. In testifying, Whitt freely held himself out as more qualified and more capable of rendering a reliable appraisal than respondent's expert. A review of the transcript and Whitt's resume reveals that Whitt was more educated and, hence, seemingly more qualified than respondent's expert, a fact that cannot be treated lightly. One need look no further than the majority opinion to learn that the trial judge determined that Whitt's appraisal was more credible than Allen's, a determination that resulted in an appraisal differential of $19,000.

I would reverse on the Rule 220 issues, and I, therefore, respectfully dissent.